Paul **CHRISTENSEN**; Candice Christensen; Eugene A. Dellavalle, Plaintiffs–Appellants,

v.

**YOLO COUNTY BOARD OF SUPERVISORS**; Davis City Council, Defendants–Appellees.

No. 91–16163.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1992.

Decided June 8, 1993.

Paul R. Christensen, in pro per.

Paul A. Kramer, Jr., Asst. County Counsel, Woodland, CA, Harriet A. Steiner, McDonough, Holland & Allen, Sacramento, CA, for defendants-appellees.

Before: CHOY, NOONAN, and O'SCANNLAIN, Circuit Judges.

CHOY, Circuit Judge:

Plaintiffs ("the Christensens") contend that defendants, by adopting a zoning agreement, (1) exercised a taking of their property in violation of the Fifth and Fourteenth Amendments; (2) violated the Due Process and Equal Protection Clauses; and (3) violated the Commerce Clause. Plaintiffs appeal pro se the district court's grant of defendants' motion for summary judgment. We affirm.

## I. FACTUAL BACKGROUND

Plaintiffs own a one-acre parcel of land in Yolo County ("County") near an exit ramp of Interstate 80, several miles east of the City of Davis ("City"). To plan for future growth the City adopted a General Plan ("Davis General Plan"). The Davis General Plan covers incorporated land within the City and unincorporated land within the County, including plaintiffs' property. In the Davis General Plan, plaintiffs' property is designated for agricultural use. The County also has a General Plan ("Yolo General Plan") covering land in the County. Under the Yolo General Plan, plaintiffs' property is designated for commercial use.

In 1985, the City commenced a redevelopment project. As a result of the redevelopment project, the County lost certain tax revenues. In 1987, the City and the County negotiated a "pass-through" agreement ("Agreement") which provided that the Davis Redevelopment Agency ("Agency") would pay the County certain property tax revenues that the Agency was entitled to by

virtue of the redevelopment plan but which would have gone to the County were it not for the redevelopment plan. Under the Agreement, the County's guarantee of receiving pass-through revenue was conditioned on the County's promise to reject plans for urban development within the portions of the County covered by the Davis General Plan.[1] The Agreement contains provisions to resolve land use disputes between the Agency and the County.

On November 8, 1989, a potential developer of plaintiffs' property wrote a letter asking the County planning staff to review a proposal for a food and liquor store. The County referred the proposal to the Agency for its opinion on whether the project constituted "urban development" under the Agreement. The Agency and the City took the view that the project would constitute "urban development."

Plaintiffs did not file a land use application or an application for a building permit. Instead, they initiated this lawsuit.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo* "to determine, viewing the evidence in the light most favorable to the nonmoving party, whether there existed any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Southern Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991). The issue of whether plaintiffs' claims are ripe for adjudication presents a question of law which we review *de novo. Id.; Herrington v. County of Sonoma*, 857 F.2d 567, 568 (9th Cir.1988), *cert.*

---

1. According to defendants/appellees, the primary reason for Davis to pass tax revenues through to the County is to alleviate the economic detriment to the County caused by the Davis redevelopment project. This economic detriment is a result of the stimulation of economic growth within the City of Davis with no corresponding growth within the County. If urban development were permitted within the County, the economic impact of the redevelopment project on the County would decrease, thereby undercutting the ratio-

nale for passing through tax revenues from Davis to the County.

While the Agreement does not allow urban development within the portions of the County covered by the Davis General Plan, the Agreement does contain a list of permitted uses for such land. Examples of permitted uses under the Agreement include agricultural use, agricultural buildings, garages, parking areas, stables, roadside stands and storage facilities.

*denied,* 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989).

## III. DISCUSSION

### A. The "As Applied" Challenge

The Christensens allege that the Agreement "as applied" to their property resulted in an unconstitutional taking of their property without just compensation. The district court concluded that the "as applied" challenge was unripe for review.

*Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), establishes two independent prerequisites to the filing of a taking claim in federal court against a state or local government. The first requires the claimant to seek a final decision regarding the application of the regulation to the property at issue from the government entity charged with its implementation before filing suit. *Id.* at 186, 105 S.Ct. at 3116. To meet the final determination requirement, a landowner must make "at least one 'meaningful application'" for a development project and a variance. *Kinzli v. City of Santa Cruz,* 818 F.2d 1449, 1454 (9th Cir.), *modified on other grounds,* 830 F.2d 968 (9th Cir.1987), *cert. denied,* 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 861 (1988). However, the Supreme Court in *Lucas v. South Carolina Coastal Council,* — U.S. —, — n. 3, 112 S.Ct. 2886, 2891 n. 3, 120 L.Ed.2d 798 (1992), held that an application for a development permit or variance is not required where it would be "pointless." We need not consider whether such an application would be pointless in this case, however, because we conclude that the Christensens have not met the second ripeness requirement.

The second ripeness requirement established in *Williamson* requires a claimant to "'seek compensation through the procedures the State has provided for doing so' before turning to the federal courts." *Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 882 F.2d 1398, 1402 (9th Cir.1989) (quoting *Williamson,* 473 U.S. at 194–95, 105 S.Ct. at 3120–21), *cert. denied,* 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990). "The Fifth Amendment does not proscribe the taking of property; it proscribes the taking without just compensation." *Williamson,* 473 U.S. at 194–95, 105 S.Ct. at 3120–21. "So long as the state provides 'an adequate process for obtaining compensation,' no constitutional violation can occur until the state denies just compensation." *Sinaloa,* 882 F.2d at 1402 (quoting *Williamson,* 473 U.S. at 194–95, 105 S.Ct. at 3120–21).

However, a plaintiff is not required to bring a state court action where it would be futile under existing state law. *Williamson,* 473 U.S. at 196–96, 105 S.Ct. at 3121–22; *Sinaloa,* 882 F.2d at 1402. An action will be considered futile only if the plaintiff can show that "the state courts establish that landowners may not obtain just compensation through an inverse condemnation action under any circumstances." *Austin v. City and County of Honolulu,* 840 F.2d 678, 681 (9th Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988). Compensation has been available under California law for inverse condemnation claims based on regulatory takings since the Supreme Court decided *First Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987) (holding that California's denial of compensation for inverse condemnation claims based on regulatory takings was unconstitutional). *Schnuck v. City of Santa Monica,* 935 F.2d 171, 173–74 (9th Cir.1991). Since the Christensens did not seek compensation through an inverse condemnation action in state court before bringing this action, the district court properly dismissed the claim as unripe. *See id.*[2]

### B. The Facial Challenges

#### 1. *Taking Claim*

Plaintiffs also contend that the Agreement is unconstitutional on its face. A zon-

---

**2.** On appeal, plaintiffs assert that the district court also dismissed their suit for failure to exhaust administrative remedies. However, the district court did not address the issue of exhausting administrative remedies in its decision granting summary judgment. Since we find that plaintiffs' "as applied" claim is not ripe for review, we find it unnecessary to address the issue of exhausting administrative remedies.

ing regulation may be challenged on the basis that the "mere enactment" of the regulation is unconstitutional and constitutes a taking of property. *Agins v. City of Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980). However, when making such a challenge, plaintiffs face an "uphill battle." *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 495, 107 S.Ct. 1232, 1247, 94 L.Ed.2d 472 (1987). To successfully claim that a zoning restriction is unconstitutional on its face, plaintiffs must show either that it does not substantially advance legitimate state interests or that it denies them economically viable use of their land. *Agins,* 447 U.S. at 260, 100 S.Ct. at 2141; *Lake Nacimiento Ranch v. County of San Luis Obispo,* 841 F.2d 872, 877 (9th Cir.1987). When making a facial attack on a zoning restriction, plaintiffs bear the burden of proof to demonstrate that the restriction is unconstitutional. *Lake Nacimiento,* 841 F.2d at 877.

■ The Agreement cites several policies underlying its adoption, including the preservation of agricultural uses of land and the alleviation of economic detriment to the County caused by the redevelopment plan.[3] Plaintiffs have failed to demonstrate that these purposes are not legitimate state interests or that the Agreement does not substantially advance them.

[5] Plaintiffs have also failed to demonstrate that the Agreement deprives them of economically viable use of their land. "Generally, the existence of permissible uses determines whether a development restriction denies a property holder the economically viable use of its property." *Id.* at 877. Plaintiffs have not shown that there are no available beneficial uses of their land under the Agreement. In fact, under the Agreement there are a number of permitted land uses, including agricultural, agricultural buildings, garages, parking areas, stables, roadside stands, day nurseries and day care centers. The availability of these other uses

of plaintiffs' land under the Agreement prevents the Agreement from being unconstitutional on its face. *See id.·*

### 2. Equal Protection and Substantive Due Process Claims

■ It appears that plaintiffs may also be asserting that the Agreement is facially invalid under the Due Process and Equal Protection Clauses. Plaintiffs' argument on these claims also lacks merit. Since the Agreement does not discriminate against any suspect class, under the Equal Protection Clause the Agreement need only be rationally related to a legitimate state interest. *Southern Pac. Transp.,* 922 F.2d at 507. The rational relationship test also applies to substantive due process challenges to property zoning ordinances. *Id.; see also Nelson v. City of Selma,* 881 F.2d 836, 838–39 (9th Cir.1989); *Boone v. Redevelopment Agency of San Jose,* 841 F.2d 886, 892 (9th Cir.), *cert. denied,* 488 U.S. 965, 109 S.Ct. 489, 102 L.Ed.2d 526 (1988).

The question presented by plaintiffs' challenge on equal protection and substantive due process grounds is whether the decision to adopt the Agreement was "rationally related to the promotion of the public health, safety or welfare." *Nelson,* 881 F.2d at 839. If it is "at least fairly debatable" that the decision to adopt the Agreement was rationally related to legitimate government interests, the adoption of the Agreement "must be upheld." *Id.; see also Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 464, 101 S.Ct. 715, 723–24, 66 L.Ed.2d 659 (1981). The Agreement was adopted pursuant to California Health and Safety Code § 33401 to alleviate the financial detriment caused to the County by the adoption of the redevelopment plan. It was also adopted to further the goal of preserving agricultural uses of land. Those are legitimate interests for government to pursue and the adoption of the

---

**3.** Alleviation of economic detriment to the County due to the adoption of the redevelopment plan is authorized under California Health and Safety Code § 33401, which states:

The agency may ... pay to any taxing agency with territory located within a project area other than the community which has adopted the project, any amount of money which the agency has found are necessary and appropriate to alleviate any financial burden or detriment caused to any taxing agency by a redevelopment project.

Cal.Health & Safety Code § 33401(b) (West Supp.1991).

Agreement is rationally related to achieving those interests. The Agreement is not arbitrary or unreasonable. Therefore, we find that the Agreement, on its face, is not invalid on either the substantive due process or equal protection ground.

### 3. *Procedural Due Process Claim*

 In their complaint, plaintiffs contend that the defendants enacted the Agreement without first giving public notice to property owners and without holding a public hearing. This appears to be the basis of plaintiffs' claim that the Agreement violates procedural due process. Zoning decisions that affect a large number of people, as opposed to zoning decisions targeted at a small number of individuals, do "not ordinarily give rise to constitutional procedural due process requirements." *Harris v. County of Riverside*, 904 F.2d 497, 502 (9th Cir.1990); *see also Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 896 (6th Cir.1991). The Agreement covers a large area of land and it is not specifically targeted at a small number of property owners. Therefore, constitutional procedural due process requirements are not applicable to the adoption of the Agreement.

Plaintiffs also appear to assert in their complaint that under California Government Code §§ 65901, 65905, 65910 and 65091, the City and the County were required to provide notice and a hearing prior to the adoption of the Agreement. However, these sections of the California Government Code do not apply to the adoption of the Agreement. Furthermore, exhibits presented by defendants demonstrate that notice was published and posted regarding the defendants' intent to adopt the Agreement at specific meetings, and also that notice was published and a public hearing was held on the redevelopment plan prior to its adoption.

### 4. *Commerce Clause Claim*

 Plaintiffs contend that the Agreement violates the Commerce Clause because enactment of the Agreement "has usurped an important federal prerogative, i.e., the determination of what is and is not appropriate interstate commerce usage for land."

A local regulation will satisfy the Commerce Clause if it "is rationally related to the social and environmental welfare of the community and does not discriminate against interstate commerce or operate to disrupt its required uniformity." *Construction Indus. Ass'n of Sonoma County v. City of Petaluma*, 522 F.2d 897, 909 (9th Cir.1975), *cert. denied*, 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 342 (1976).

The agreement is rationally related to the social and environmental welfare of the community. It advances the policies of Yolo County to preserve prime agricultural land and to discourage urban sprawl. Furthermore, there has been no evidence presented by plaintiffs that the Agreement discriminates against interstate commerce or disrupts its required uniformity. Summary judgement was properly granted on this issue.

**AFFIRMED.**