74 F.3d 1249
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 John R. HARRIS and his wife, Virginia L. Harris; Charles W.
Harris and his wife, Jane C. Harris; and Trail N
Sail, Inc., Plaintiffs-Appellants,
v.
CITY OF WICHITA, SEDGWICK COUNTY, KANSAS; and Board of
County Commissioners of Sedgwick County, Kansas,
Defendants-Appellees.
 No. 94-3357.
 United States Court of Appeals, Tenth Circuit.
 Jan. 3, 1996.
 
 1
 Before BRISCOE and MURPHY, Circuit Judges, and JENKINS, Senior District Judge.*
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 JENKINS, Senior District Judge.
 
 
 4
 The plaintiffs own land to the north of the airport at McConnell Air Force Base in Wichita, Sedgwick County, Kansas. At the recommendation of the Air Force, the City of Wichita passed an ordinance and Sedgwick County passed a resolution creating so-called airport overlay districts (AODs) north of McConnell and prohibiting certain uses of the property within the districts. The plaintiffs' property is within the AODs.
 
 
 5
 The plaintiffs brought this civil-rights action claiming that the City and County had violated their constitutional rights. The district court dismissed as unripe the plaintiffs' constitutional claims as applied to their property. The plaintiffs do not challenge that ruling on appeal. The district court also granted summary judgment in favor of the defendants on the plaintiffs' facial constitutional challenge, without allowing the plaintiffs to conduct discovery. The district court concluded that the AOD restrictions were a proper exercise of the defendants' police power, were rationally related to a legitimate governmental purpose and were not arbitrary and capricious.
 
 
 6
 On appeal, the plaintiffs raise only two issues--whether the defendants' land-use restrictions are unconstitutional on their face, and whether the district court improperly stayed discovery. We affirm on both issues.
 
 I.
 
 7
 At oral argument, counsel for the plaintiffs candidly admitted that, if the plaintiffs were not entitled to further discovery, a reversal on the merits would do them little good. We will therefore address the discovery issue first.
 
 
 8
 In response to the plaintiffs' complaint, the defendants filed motions to dismiss or, in the alternative, for summary judgment. They then sought protective orders suspending discovery until the court ruled on their motions to dismiss or for summary judgment. Apparently the magistrate judge stayed discovery pending resolution of the summary judgment motions, although an order staying discovery was not entered until after the plaintiffs filed their notice of appeal. The plaintiffs claim that the district court erred by deciding the summary judgment motions without first allowing them to complete discovery.
 
 
 9
 We review decisions relating to discovery for an abuse of discretion. Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1520 (10th Cir.1995).
 
 
 10
 It does not appear from the record that the district judge expressly considered the plaintiffs' argument that they should have been allowed discovery. However, a judgment that reaches the correct result will not be disturbed on appeal even if the trial court relied upon a wrong ground for its judgment, Miller v. City of Broken Arrow, 660 F.2d 450, 456 (10th Cir.1981), cert. denied, 455 U.S. 1020 (1982), or, as here, did not expressly address the issue. We can affirm on any ground that finds support in the record. Colorado Flying Academy, Inc. v. United States, 724 F.2d 871, 880 (10th Cir.1984), cert. denied, 476 U.S. 1182 (1986).
 
 
 11
 The rule governing summary judgments provides the mechanism for opposing summary judgment when further discovery is necessary:
 
 
 12
 Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
 
 
 13
 Fed.R.Civ.P. 56(f). A rule 56(f) affidavit must contain more than a mere assertion that further discovery is necessary. It must also "state with specificity why extra time is needed and how the additional time and material will rebut the summary judgment motion." International Surplus Lines Ins. Co. v. Wyoming Coal Refining Sys., Inc., 52 F.3d 901, 905 (10th Cir.1995). See also Patty Precision v. Brown & Sharpe Mfg. Co., 742 F.2d 1260, 1264 (10th Cir.1984) ("the party filing the affidavit must show how additional time will enable him to rebut [the] movant's allegations of no genuine issue of fact"). The failure to file a rule 56(f) affidavit alone can be enough to reject a claim that the opportunity for discovery was inadequate. Burlington Coat Factory Warehouse Corp. v. Esprit de Corp., 769 F.2d 919, 926 (2d Cir.1985). See also Weir v. Anaconda Co., 773 F.2d 1073, 1079-80 n. 4, 1082 & n. 10 (10th Cir.1985). But see Committee for the First Amendment v. Campbell, 962 F.2d 1517, 1523 (10th Cir.1992) ("Even in the absence of a properly supported request under Rule 56(f), a district court may, in the interest of justice, allow a party additional time to marshal what evidence he does have in opposition to a summary judgment motion") (emphasis added).
 
 
 14
 It appears from the record that the plaintiffs did not submit a rule 56(f) affidavit. They only suggested, in their brief in response to the defendants' motions to dismiss or for summary judgment, that the court should allow discovery to be completed before hearing those motions. They did not specify what facts they hoped to discover. Bare assertions in memoranda that additional discovery is necessary cannot substitute for a rule 56(f) affidavit. Committee for the First Amendment, 962 F.2d at 1522. Even in a rule 56(f) affidavit, such conclusory assertions cannot preclude summary judgment. International Surplus Lines, 52 F.3d at 905. The district court therefore did not err in ruling on the defendants' summary judgment motions without first allowing additional discovery.[1]
 
 
 15
 Moreover, the plaintiffs have not shown that they would have been entitled to the additional discovery they claim the district court should have allowed.
 
 
 16
 Before a party can obtain discovery, he or she must first show that the information sought to be discovered "is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). On appeal, the plaintiffs claim that additional discovery might have shown that, in adopting use restrictions that affect the plaintiffs' property, the City and County were motivated not so much by safety concerns as by pressure from the Air Force and the fear that the Air Force might close McConnell if the defendants did not meet its demands. Ordinarily, the subjective motivation of governing bodies is irrelevant to the validity of their enactments. See, e.g., National Paint & Coating Ass'n v. City of Chicago, 147 F.R.D. 184, 185 (N.D.Ill.1993); Apel v. Murphy, 70 F.R.D. 651, 654-55 (D.R.I.1976). That is because courts usually "will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." United States v. O'Brien, 391 U.S. 367, 383 (1968). Courts "must judge by results, not by the varied factors which may have determined legislators' votes." Daniel v. Family Sec. Life Ins. Co., 336 U.S. 220, 224 (1949). See also Fraternal Order of Police Hobart Lodge # 121, Inc. v. City of Hobart, 864 F.2d 551, 554 (7th Cir.1988).
 
 
 17
 Discovery into motive may be permissible when the alleged constitutional violation " 'turns on an unconstitutional motive,' " that is, where the government's motive is what makes the action unconstitutional. Penthouse Int'l, Ltd. v. Meese, 939 F.2d 1011, 1017 (D.C.Cir.1991) (quoting Siegert v. Gilley, 895 F.2d 797, 802 (D.C.Cir.1990), aff'd on other grounds, 500 U.S. 226 (1991)), cert. denied, 503 U.S. 950 (1992).[2] As discussed more fully below, however, the plaintiffs have not shown that the City ordinance and County resolution would be unconstitutional even if they had been passed to forestall the closing of McConnell. Therefore, we cannot say the district court abused its discretion by granting the defendants' motions for summary judgment without allowing the plaintiffs discovery.
 
 II.
 
 18
 On the merits, the plaintiffs claim that the City ordinance and County resolution creating the airport overlay districts (AODs) and adopting land-use restrictions for those districts are invalid on their face. The district court rejected the argument and granted the defendants summary judgment on the plaintiffs' facial invalidity claim.
 
 
 19
 We review a grant of summary judgment de novo. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir.), cert. denied, 113 S.Ct. 635 (1992). That does not mean, however, that we review the City's and County's actions de novo. The plaintiffs concede that the issue before the district court was not whether the City's and County's actions were necessary or even wise but whether the actions were arbitrary and capricious. The plaintiffs claim that the district court erred in holding that the defendants' imposition of density and use restrictions for the plaintiffs' property was not arbitrary and capricious.[3]
 
 
 20
 In determining whether local governmental action is arbitrary and capricious, courts are not free to substitute their own judgment for that of the local governing bodies. "[T]he federal courts do not sit as arbiters of the wisdom or utility of [social and economic] laws." Allright Colorado, Inc. v. City & County of Denver, 937 F.2d 1502, 1512 (10th Cir.1991) (quoting Alamo Rent-A-Car, Inc. v. Sarasota-Manatee Airport Auth., 825 F.2d 367, 370 (11th Cir.1987), cert. denied, 484 U.S. 1063 (1988)), cert. denied, 502 U.S. 1082 (1992). This is particularly true in cases involving land-use policy.
 
 
 21
 In this circuit, the standard for determining whether or not a land-use decision is arbitrary and capricious may depend on whether the decision is considered quasi-legislative or quasi-judicial. See Jacobs, 927 F.2d at 1120 n. 7 (for a quasi-judicial decision, the court must determine whether it bears "a rational relationship to a legitimate state interest," whereas for a quasi-legislative decision "the court need only find a rational reason upon which the decision could have been based"). See also Pearson, 961 F.2d at 1217-23 (surveying the approaches taken by the various circuits in zoning cases raising "arbitrary and capricious substantive due process" challenges). The court need not decide whether the defendants' actions were quasi-legislative or quasi-judicial, because the plaintiffs have not shown that those actions were arbitrary and capricious under either standard.
 
 
 22
 The plaintiffs concede that public safety is a legitimate governmental interest. They claim, however, that the defendants' safety concerns were misplaced because they were based on outdated and unreliable information. In particular, the plaintiffs challenge the accuracy of a study the Air Force submitted to the City and County, entitled Air Installation Compatible Use Zone Study (AICUZ). The plaintiffs claim that AICUZ was based on data collected for the years 1968 through 1972 and that aviation safety has improved dramatically since 1972. They claim the district court erred by not inquiring sufficiently into the underlying data and not taking into account the plaintiffs' expert testimony that the land-use restrictions imposed were not necessary to promote public safety.
 
 
 23
 The short answer to the plaintiffs' argument is that reliance on inaccurate information does not necessarily make a decision arbitrary and capricious. See, e.g., National Paint, 147 F.R.D. at 186 (a city council could have acted with no information or even with false information when it passed an ordinance, and the ordinance would still be valid if it was likely to further a legitimate governmental purpose). The evidence shows that the City and County considered the plaintiffs' evidence, but even discounting AICUZ's conclusion about the risks of accidents accordingly, there was still sufficient evidence that the risk of an airplane crash in one of the AODs was much greater than in other areas of the City and County.[4] It was undisputed, for example, that, at least as of 1985, there was still an average of over two airplane crashes in AODs near Air Force bases in this country each year and that the area within an AOD is fifty times more likely to have an airplane crash than other areas around an air base.[5] It was also undisputed that the average airplane crash affects over five acres of land. The defendants could legitimately conclude that the risk of a serious accident in an AOD was sufficiently great as to justify restricting high-density uses in those areas. In correlating the AODs to the risk of accident, the defendants were not required to "achieve perfection or mathematical exactitude." See Allright Colorado, 937 F.2d at 1513 (quoting Alamo Rent-A-Car, 825 F.2d at 371). They were only required to show a rational relationship between their actions and public safety, a legitimate governmental concern. The district court properly concluded that the ordinance and resolution creating the AODs and restricting high-density uses within them were rationally related to public safety.
 
 
 24
 Nevertheless, governmental action may be arbitrary and capricious if the government acted for an improper motive (such as out of racial animus or for partisan political or personal reasons). See Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 683 (3d Cir.1991), cert. denied, 503 U.S. 984 (1992). The plaintiffs suggest that the defendants had an improper motive for creating the AODs, namely, to appease the Air Force, in hopes of preventing McConnell's closure. Local governments cannot bow to community sentiment when that sentiment is based on "negative attitudes, or fear, unsubstantiated by factors which are properly cognizable in a [land use] proceeding...." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 448 (1985). However, the plaintiffs have not shown that concern for McConnell's continued existence would have been improper.
 
 
 25
 Governments have wide latitude to regulate private property in ways that may adversely affect property owners, in the interest of the public's general welfare. See Hodel v. Irving, 481 U.S. 704, 713 (1987); Tirolerland, Inc. v. Lake Placid 1980 Olympic Games, Inc., 592 F.Supp. 304, 311 (N.D.N.Y.1984). In considering the public's welfare, a city or county may consider such wide-ranging factors as increased traffic, noise, the effect on property values, the increased demand for city or county services, the preservation of agricultural uses of land, the undesirable side effects of a proposed use, public safety and even such intangible factors as community pride and aesthetics. See, e.g., Members of the City Council v. Taxpayers for Vincent, 466 U.S. 789, 805 (1984); Holmberg v. City of Ramsey, 12 F.3d 140, 143 (8th Cir.1993), cert. denied, 115 S.Ct. 59 (1994); Corn v. City of Lauderdale Lakes, 997 F.2d 1369, 1375 (11th Cir.1993), cert. denied, 114 S.Ct. 1400 (1994); Christensen v. Yolo County Bd. of Supervisors, 995 F.2d 161, 165 (9th Cir.1993). In particular, local governments may consider economic factors, such as the need to raise revenue, Allright Colorado, 937 F.2d at 1512; economic development, Oberndorf v. City & County of Denver, 900 F.2d 1434, 1442 (10th Cir.), cert. denied, 498 U.S. 845 (1990); Thornton Dev. Auth. v. Upah, 640 F.Supp. 1071, 1077 (D.Colo.1986); the alleviation of economic detriment caused by redevelopment, Christensen, 995 F.2d at 165; and the promotion of economic growth and the creation of jobs, Hughes v. Consol-Pennsylvania Coal Co., 945 F.2d 594, 613 (3d Cir.1991), cert. denied, 504 U.S. 955 (1992); United States ex rel. Tenn. Valley Auth. v. Two Tracts of Land, 387 F.Supp. 319, 321 (E.D.Tenn.1974), aff'd, 532 F.2d 1083 (6th Cir.), cert. denied, 429 U.S. 827 (1976). This court has recognized that an increase in employment and the stimulation of economic growth "has a beneficial effect ... and promotes the public welfare." Oklahoma City v. Sanders, 94 F.2d 323, 327 (10th Cir.1938). The plaintiffs have not shown that a desire to keep open what is presumably a major employer and prevent the economic chaos the loss of McConnell might bring to the area was not a legitimate governmental concern.[6]
 
 
 26
 Moreover, even if the defendants bowed to pressure from the Air Force in adopting its proposed AODs, the plaintiffs have not shown that the Air Force was not legitimately concerned with public safety around its base. The fact that the defendants' actions may have benefited the Air Force does not necessarily mean that they did not advance the public welfare as well. See, e.g., Hughes, 945 F.2d at 613; Murphy v. Amoco Prod. Co., 729 F.2d 552, 555 (8th Cir.1984).
 
 
 27
 In short, the plaintiffs did not meet their burden of showing that the defendants' actions were arbitrary or capricious or otherwise improper. The summary judgments in favor of the defendants are therefore AFFIRMED.
 
 
 
 *
 The Honorable Bruce S. Jenkins, Senior District Judge, United States District Court for the District of Utah, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 The district court did not preclude the plaintiffs from presenting facts in opposition to the defendants' motions for summary judgment, and in fact the plaintiffs introduced affidavits and other materials to support their factual contentions in opposition to the defendants' motions
 
 
 [2]
 For a catalog of cases in which the Supreme Court has held an unconstitutional purpose to be an essential element of a claim, see Goldberg v. Whitman, 743 F.Supp. 943, 949-50 (D.Conn.1990), aff'd, 973 F.2d 70 (2d Cir.1992). Constitutional challenges to land-use decisions not based on racial discrimination are not among them
 
 
 [3]
 The plaintiffs' precise legal theories are not clear from their second amended complaint. A constitutional challenge to land-use regulation can be based on, among other things, the Takings Clause of the Fifth Amendment (applied to the states by the Fourteenth Amendment), on the Due Process Clauses of the Fifth and Fourteenth Amendments or on the Equal Protection Clause of the Fourteenth Amendment (or the equal protection component of the Fifth Amendment's Due Process Clause). See Pearson v. City of Grand Blanc, 961 F.2d 1211, 1215-16 (6th Cir.1992); Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, 927 F.2d 1111, 1115 (10th Cir.1991). See also Eide v. Sarasota County, 908 F.2d 716, 720-22 (11th Cir.1990), cert. denied, 498 U.S. 1120 (1991). Presumably, the plaintiffs intended all three types of challenges. On appeal, however, they have only argued that the defendants' actions were arbitrary and capricious. The "arbitrary and capricious" standard is the standard for a substantive due process challenge. See Pearson, 961 F.2d at 1216-17; Jacobs, 927 F.2d at 1119; Eide, 908 F.2d at 721-22. To establish an equal protection violation, where, as here, the plaintiffs do not claim that they are members of a suspect class or that the regulation impinges on a fundamental right, the plaintiffs must show that the classification the regulation creates is not "rationally related to a legitimate government purpose." See Eide, 908 F.2d at 722. To establish a takings claim, the plaintiffs must show that the regulation does not "substantially advance" a "legitimate" governmental interest or denies them the "economically viable use" of their land. See Agins v. City of Tiburon, 447 U.S. 255, 260 (1980). (The plaintiffs concede that their claim for deprivation of the economically viable use of their land is not yet ripe.) Broadly speaking, all three types of challenges require some connection between governmental ends and means. The court concludes that there is the necessary nexus between the City's and County's actions and legitimate governmental purposes, regardless of the particular constitutional theory the plaintiffs rely on
 
 
 [4]
 AICUZ may have overstated the risks of accidents, but the plaintiffs have overstated on appeal the safety of the area surrounding Air Force bases such as McConnell. The plaintiffs claim that their evidence showed that the risk of an Air Force plane striking any given acre in AOD II was less than one in 19,547 years and, for AOD III, less than one in 43,268 years. The evidence the plaintiffs cite evaluated the risk of an accident within a given acre within the 500-foot-wide strips of land on either edge of the AODs and did not consider the risk of accident within the 2800-foot-wide centers of the AODs. Moreover, it considered only the risk of accident within one acre of the 500-foot-wide strips and not the risk within the strips as a whole. As the County points out, presumably the risk would have been even less if the plaintiffs had looked at a single square foot and not a particular acre
 
 
 [5]
 Three of the crashes occurring in the period 1972-85 occurred in the areas proposed for regulation near McConnell, and a fourth occurred nearby
 
 
 [6]
 Of course, the City and County cannot make the plaintiffs alone shoulder the economic cost of keeping a major employer in the area. See Dolan v. City of Tigard, 114 S.Ct. 2309, 2316 (1994) ("One of the principal purposes of the Takings Clause is 'to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole") (citation omitted). If, in their alleged efforts to prevent the closure of McConnell, the defendants have deprived the plaintiffs of the economically viable use of their land, the City and County may have to compensate them. See id. But that issue is not now before us. See supra note 3