96 F.3d 401
 96 Cal. Daily Op. Serv. 6900, 96 Daily Journal
D.A.R. 11,329
SINCLAIR OIL CORPORATION, a Wyoming Corporation, Plaintiff-Appellant,
v.
COUNTY OF SANTA BARBARA, a Political Subdivision of the
State of California; Santa Barbara County Board
of Supervisors, Defendants-Appellees.
 No. 94-56611.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 8, 1996.
Decided Sept. 16, 1996.
 
 Michael M. Berger, Berger & Norton, Santa Monica, California, for plaintiff-appellant.
 Paula F. Frantz, County of Santa Barbara County Counsel's Office, Santa Barbara, California; David Pettit and Sherryl E. Michaelson, Hedges & Caldwell, Los Angeles, California, for defendants-appellees.
 Appeal from the United States District Court for the Central District of California, Robert M. Takasugi, District Judge, Presiding. D.C. No. CV-93-06943-RMT.
 Before: FLOYD R. GIBSON,* NOONAN, and THOMPSON, Circuit Judges.
 FLOYD R. GIBSON, Circuit Judge:
 
 
 1
 Sinclair Oil Corporation ("Sinclair"), the owner of six lots comprising 265 acres of undeveloped coastal land in Santa Barbara County, California ("the County"), filed a suit alleging primarily that the County's exercise of its regulatory powers had effected a "taking" of Sinclair's property for which "just compensation" was due under the federal and state constitutions. The district court dismissed four of Sinclair's claims as unripe for federal adjudication; the court dismissed the remaining cause of action, which sought a writ of mandate declaring the pertinent zoning actions invalid under California law, based on its belief that 28 U.S.C. § 1651, the All Writs Act, could not provide an independent basis for jurisdiction. In this appeal, Sinclair argues that its federal constitutional claims are ripe and that, even if they are not, the court should have assumed diversity jurisdiction over the state law claims. The County responds that the district court correctly determined that this suit is not ripe. In addition, assuming that any of Sinclair's claims are justiciable, the County contends that the federal courts should abstain from considering this case. We affirm in part, reverse in part, and remand with instructions.
 
 I. BACKGROUND
 
 2
 Under California law, every county must adopt a "General Plan" of land use regulation. See Cal. Gov't Code §§ 65300-65361 (West 1996). In 1993, the County supplemented its existing General Plan by promulgating a "Community Plan" as described in Cal. Pub. Res.Code § 21083.3(e) (West 1996). When it enacted this Community Plan, which was applicable to a particular geographic region known as Goleta, the County contemporaneously approved an environmental impact report designating certain areas as environmentally sensitive habitats. Once land has been specified as an environmentally sensitive habitat, its use is significantly restricted and subject to severe limitations. See Sierra Club v. California Coastal Comm'n, 12 Cal.App.4th 602, 611, 15 Cal.Rptr.2d 779 (Cal.Ct.App.1993).
 
 
 3
 Sinclair owns 265 acres of undeveloped coastal land in Santa Barbara County; this property, known as "More Mesa," is subject to the Goleta Community Plan ("the Plan"). The Plan substantially affects Sinclair's property, as it reduced from 300 to 70 the number of homes potentially allowable on More Mesa. Furthermore, the Plan designated a large portion of the land as an environmentally sensitive habitat. The Plan did create an administrative procedure through which Sinclair could petition to develop more than 70 residences on the site. To date, though, Sinclair has not submitted to the County a proposal for development of More Mesa, and it has also failed to seek compensation from the County.
 
 
 4
 On November 17, 1993, Sinclair filed this lawsuit in the United States District Court for the Central District of California.[1] The complaint asserted that the Plan, on its face, effected a taking of Sinclair's property requiring just compensation under the California and United States Constitutions. Furthermore, citing the County's allegedly unreasonable precondemnation conduct, Sinclair sought additional compensation pursuant to both federal and state law. In addition, Sinclair claimed that the County's adoption of the Plan violated Sinclair's substantive due process rights. Finally, Sinclair asked the district court to issue a writ of mandate declaring the Plan invalid under California's statutes governing the adoption and implementation of general plans.
 
 
 5
 The County did not answer the complaint, but instead filed a motion to dismiss the suit. The district court granted the motion, labelling as unripe four of Sinclair's five causes of action. The court also dismissed the remaining claim, the petition for a writ of mandate, because it believed that the All Writs Act, 28 U.S.C. § 1651 (1994), could not provide an independent basis for federal jurisdiction. Though Sinclair, reminding the court that the state law causes of action were premised upon diversity jurisdiction, asked for reconsideration of the dismissal of those claims, the court refused to waver from its initial decision. Sinclair filed a timely notice of appeal from the district court's judgment.
 
 
 6
 Before this Court, Sinclair maintains the district court improperly concluded that its facial challenges to the land use regulations are not ripe for federal adjudication. The County remonstrates that the court correctly determined the claims are not yet justiciable. In the alternative, the County contends the federal courts should abstain from hearing this case.
 
 II. DISCUSSION
 A. Standard of Review
 
 7
 This court reviews de novo a district court's ripeness determination. Christensen v. Yolo County Bd. of Supervisors, 995 F.2d 161, 163 (9th Cir.1993). In general, motions to dismiss "must be viewed with particular skepticism in cases involving claims of inverse condemnation." Sinaloa Lake Owners Ass'n v. City of Simi Valley, 882 F.2d 1398, 1401 (9th Cir.1989), cert. denied, 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990).
 
 
 8
 B. The Ripeness of Sinclair's Federal Constitutional Claims
 
 
 9
 In Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Supreme Court clarified the ripeness requirements applicable to "as applied" constitutional challenges to land use regulations. Before a plaintiff can bring such a suit in federal court, he must first procure from the relevant regulatory body "a final decision regarding how [he] will be allowed to develop [his] property." Id. at 190, 105 S.Ct. at 3118. To satisfy this requirement, a California landowner must submit to local decision-makers at least one meaningful application for a development project and a variance. Southern Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 503 (9th Cir.1990), cert. denied, 502 U.S. 943, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991). Additionally, because the Fifth Amendment does not prohibit all takings, but merely takings unaccompanied by just compensation, an as applied challenge is unripe unless the plaintiff has sought "compensation through the procedures the State has provided for doing so." Williamson County, 473 U.S. at 194, 105 S.Ct. at 3120; see also Jones Intercable v. City of Chula Vista, 80 F.3d 320, 324 (9th Cir.1996) (observing that a California plaintiff's federal takings claim will not ripen until the party has first sought compensation through that state's inverse condemnation proceedings).
 
 
 10
 While these twin ripeness requirements are clearly applicable to all claims which, like the causes of action in Williamson County, raise as applied arguments under the Constitution's Takings Clause, they are not so suitable as prerequisites to other varieties of federal land use litigation. In this case, Sinclair contests the Plan's facial validity under various constitutional provisions.[2] Consequently, we will separately address the ripeness of each of these claims.
 
 1. The facial taking claims
 
 11
 In counts three and four of its complaint, Sinclair asserts that the Plan, on its face, constitutes a taking of the More Mesa property for which just compensation is due under the Fifth Amendment. Sinclair, though, "faces an 'uphill battle in making a facial attack on the zoning restriction as a taking.' " Lake Nacimiento Ranch Co. v. San Luis Obispo County, 841 F.2d 872, 877 (9th Cir.1987) (quoting Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 495, 107 S.Ct. 1232, 1247, 94 L.Ed.2d 472 (1987)) (alteration omitted), cert. denied, 488 U.S. 827, 109 S.Ct. 79, 102 L.Ed.2d 55 (1988). To prevail on the merits of this claim, Sinclair will be required to show that the Plan either: (1) does not substantially advance legitimate state interests; or (2) denies the company the economically viable use of its land. Christensen, 995 F.2d at 165.
 
 
 12
 It is fairly well-settled in this Circuit that the first Williamson County ripeness requirement, the "finality" requirement, is not germane to facial taking claims. See Lake Nacimiento, 841 F.2d at 877 (addressing merits of facial challenge even though landowner had failed to satisfy the finality requirement). But cf. Southern Pac., 922 F.2d at 506 n. 9 (noting that this Circuit has never explicitly held the finality requirement applicable to facial taking claims, but refusing to decide the question). It is less clear, however, whether the second ripeness criterion, the "just compensation" requirement, applies to these claims. Compare Southern Pac., 922 F.2d at 505-06 ("[A] claim alleging that mere enactment of a statute effects an unconstitutional taking is unripe unless and until it is known what, if any, compensation is available.") with Christensen, 995 F.2d at 164-65 (reaching merits of facial challenge even though the landowners had not satisfied the just compensation requirement).
 
 
 13
 In Southern Pacific, after carefully considering our prior decisions in this area, we determined that the just compensation requirement should apply to taking cases questioning the facial validity of land use regulations. This approach seems to be consistent with both the language of the Fifth Amendment and the Supreme Court's opinion in Williamson County. In that case, the Court emphasized:
 
 
 14
 [B]ecause the Fifth Amendment proscribes takings without just compensation, no constitutional violation occurs until just compensation has been denied. The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a § 1983 action.
 
 
 15
 Williamson County, 473 U.S. at 194 n. 13, 105 S.Ct. at 3120 n. 13. Thus, even if a zoning ordinance, on its face, "takes" property for Fifth Amendment purposes, no constitutional violation occurs until the state refuses to justly compensate the property owner. Indeed, we have found that landowners who assert their property has been physically taken must first seek compensation from the state before turning to a federal forum. Sinaloa Lake, 882 F.2d at 1402.
 
 
 16
 Nonetheless, this Court has not uniformly applied the just compensation requirement to facial taking challenges. See Christensen, 995 F.2d at 164-65; Lake Nacimiento, 841 F.2d at 877 (considering facial taking challenge even though there is no indication that the landowner sought just compensation using state procedures). In fact, the Supreme Court has itself indicated that the extent to which a property owner is compensated is irrelevant to a facial taking analysis. See Yee v. City of Escondido, 503 U.S. 519, 533-34, 112 S.Ct. 1522, 1531-32, 118 L.Ed.2d 153 (1992).
 
 
 17
 This seeming inconsistency can perhaps be best explained by analyzing the type of facial taking claim at issue in a particular case. As noted above, a regulation represents a facial taking if it either fails to substantially advance legitimate state interests or deprives the landowner of the economically viable use of his land. The petitioner in Yee proceeded solely alleging the first type of facial taking claim and asserted only that the relevant ordinance did not substantially advance a legitimate state interest. See id. The Supreme Court stated that this type of claim "does not depend on the extent to which [landowners] are deprived of the economic use of their ... property or the extent to which [they] ... are compensated ..." Id. at 534, 112 S.Ct. at 1532; see also Carson Harbor Village Ltd. v. City of Carson, 37 F.3d 468, 476 (9th Cir.1994) (stating in dicta that a "legitimate state interest" claim does not depend on the amount of compensation provided to the landowner). In contrast, the extent to which a landowner has been compensated is relevant when he maintains that a regulation has denied him the economically viable use of his land. If the local government has adequately compensated the property owner for the deprivation of use, the Fifth Amendment would not provide him any additional benefits.
 
 
 18
 It appears, then, that while the just compensation ripeness requirement does not apply to "legitimate state interest" facial taking claims, it does apply to claims premised upon the denial of a property's economically viable use. Therefore, the federal facial taking claim contained in count three of Sinclair's complaint is not ripe, because it contends that the Plan stripped More Mesa of its economically viable use. On the other hand, the federal facial taking claim embodied in count four of Sinclair's complaint is ripe, as it asserts that the Plan does not substantially advance a legitimate state interest.
 
 2. The substantive due process claim
 
 19
 Sinclair also argues that the County's adoption of the Plan violated its substantive due process rights. In the past, we held that Williamson County's ripeness requirements were immaterial to a facial taking claim alleging an infringement of substantive due process rights. See Kawaoka v. City of Arroyo Grande, 17 F.3d 1227, 1232 (9th Cir.) ("Ripeness requirements are relevant only to 'as applied' [substantive due process] challenges, and not to facial challenges."), cert. denied, 513 U.S. 870, 115 S.Ct. 193, 130 L.Ed.2d 125 (1994). Nevertheless, in recent days we have expressly refuted the notion that substantive due process claims can apply where the government has allegedly effected a taking violative of the Fifth Amendment. Armendariz v. Penman, 75 F.3d 1311, 1325-26 (9th Cir.1996) (en banc). In Armendariz, we explained that "[s]ubstantive due process analysis has no place in contexts already addressed by explicit textual provisions of constitutional protection, regardless of whether the plaintiff's potential claims under those amendments have merit." Id. Sinclair's substantive due process claim, therefore, no longer states a valid cause of action.[3]
 
 
 20
 3. The unreasonable precondemnation delay claim
 
 
 21
 We have previously acknowledged that under certain circumstances a government's precondemnation activities can give rise to a federal taking claim in favor of a property owner. See Kaiser Dev. Co. v. City & County of Honolulu, 913 F.2d 573, 575 (9th Cir.1990), cert. denied, 499 U.S. 947, 111 S.Ct. 1414, 113 L.Ed.2d 467 (1991). The courts in this Circuit have also found, though, that both Williamson County ripeness requirements apply to these types of claims. See Southern Pac., 922 F.2d at 503-05; Picard v. Bay Area Regional Transit Dist., 823 F.Supp. 1519, 1522 (N.D.Cal.1993). As such, Sinclair's federal claim alleging unreasonable precondemnation delay is not ripe.
 
 
 22
 C. Sinclair's Taking Claims under California State Law
 
 
 23
 Sinclair, a Wyoming corporation, in addition to its federal grounds for relief, sought to invoke the district court's diversity jurisdiction over various state law causes of action. The district court dismissed the state law claims after finding that they, too, were unripe. We conclude that the court's decision to summarily dispose of these claims was proper.
 
 1. The state inverse condemnation claim
 
 24
 In Hensler v. City of Glendale, 8 Cal.4th 1, 32 Cal.Rptr.2d 244, 876 P.2d 1043 (1994) (en banc), cert. denied, --- U.S. ----, 115 S.Ct. 1176, 130 L.Ed.2d 1129 (1995), the California Supreme Court outlined the procedure that landowners should follow when bringing inverse condemnation suits in the state courts. Where a facial challenge to a regulation is involved, the landowner need not seek a variance from the ordinance or exhaust administrative remedies. See id. at 252, 876 P.2d at 1051. Instead, the property owner may immediately contest the allegedly invalid regulation in a declaratory judgment suit joined with an inverse condemnation action. Id. When opposing a regulation as applied to a particular parcel, on the other hand, the owner must first utilize available administrative procedures before seeking recourse in the state courts. Id. Consequently, the ripeness of this state law claim, which may properly be viewed as a declaratory judgment action joined with a claim for inverse condemnation,[4] depends upon how the California courts would regard the regulatory challenge.
 
 
 25
 Our review of the relevant authorities reveals that the courts in California have strictly construed, and vigorously enforced, the distinction between facial and as applied claims. For example, the court in Tahoe-Sierra Preservation Council v. State Water Resources Control Bd., 210 Cal.App.3d 1421, 259 Cal.Rptr. 132, 146-47 (1989), while affirming the trial court's dismissal on the pleadings, determined that the appellants had mischaracterized their challenge to a land use plan as a facial cause of action. According to the court:
 
 
 26
 A claim that a regulation is facially invalid is only tenable if the terms of the regulation will not permit those who administer it to avoid an unconstitutional application to the complaining parties. This restraint stems from the prudent judicial policy of avoiding officious checking of the political branches of the government. The question whether an alleged unconstitutional application of a regulation may be avoided is not governed by the conclusional allegations of the complaint. Rather, it turns upon the court's appraisal of the legal effect of the regulation.
 
 
 27
 Id. 259 Cal.Rptr. at 146 (citations omitted). Under the plan at that time before the California Court of Appeal, an aggrieved individual was afforded an opportunity to demonstrate to the regulating authority that her property should not be subject to the generally applicable land use standards. Id. Thus, those who administered the plan had the latitude to prevent an "unconstitutional application [of the regulation] to the complaining parties," id., and the appellants were constrained to oppose the plan via an as applied challenge, id. 259 Cal.Rptr. at 146-47.
 
 
 28
 Simply put, under California law "an ordinance is safe from a facial challenge if it preserves, through a permit procedure or otherwise, some economically viable use of the property. In such a case, administrative remedies must be pursued if available because the challenge is actually an 'as-applied' one." Del Oro Hills v. City of Oceanside, 31 Cal.App.4th 1060, 37 Cal.Rptr.2d 677, 687-88, cert. denied, --- U.S. ----, 116 S.Ct. 86, 133 L.Ed.2d 43 (1995). Importantly, the Plan at issue in the appeal sub judice provides for a procedure under which Sinclair may request to engage in more extensive development of its property. See Goleta Community Plan, Dev.Std. LUDS-GV-1.2 pp. 50-51 (describing method through which County might accept an "increase in the developable area" or an "increase in the number of allowable units" on More Mesa). Accordingly, the County is at liberty to prevent the unconstitutional application of the Plan to Sinclair's land. Applying California law to this diversity cause of action, as we must, we conclude that the courts of that state would adjudge this inverse condemnation claim to be an as applied challenge to the Plan. Because Sinclair has failed to pursue available administrative remedies, the district court properly dismissed Sinclair's first and fourth causes of action as unripe.2. The state law claim alleging unreasonable precondemnation delay
 
 
 29
 Sinclair's complaint also includes a state law claim asserting unreasonable precondemnation delay. The California Supreme Court has acknowledged that a plaintiff can recover for a government's unreasonable precondemnation conduct where: "(1) the [government] acted improperly either by unreasonably delaying eminent domain action following an announcement of intent to condemn or by other unreasonable conduct prior to condemnation; and (2) as a result of such action the property in question suffered a diminution in market value." Klopping v. City of Whittier, 8 Cal.3d 39, 104 Cal.Rptr. 1, 11, 500 P.2d 1345, 1355 (1972) (en banc).
 
 
 30
 We believe that the California courts would find this claim, like its federal analogue, unripe because Sinclair failed to procure a final decision from the County. Cf. Hensler, 32 Cal.Rptr.2d at 249-53, 876 P.2d at 1048-52 (suggesting that, though the California constitution protects a somewhat broader range of property than the Fifth Amendment, the necessity of obtaining a final decision from the regulatory entity applies with equal force to claims under state law). It necessarily follows that we must affirm the district court's decision to dismiss this cause of action as unripe.
 
 D. Abstention
 
 31
 To recapitulate, we have decided that the district court correctly dismissed all of Sinclair's grounds for relief except the company's federal facial taking claim to the extent it asserts the Plan does not substantially advance a legitimate state interest. We now determine that the district court should refrain from presently addressing this claim under the reasoning of Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).
 
 
 32
 This Court has in multiple land use cases approved a district court's decision to employ Pullman abstention. See, e.g., Sederquist v. City of Tiburon, 590 F.2d 278 (9th Cir.1978). Pullman abstention is appropriate where:
 
 
 33
 (1) The complaint touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open.
 
 
 34
 (2) Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy.
 
 
 35
 (3) The possibly determinative issue of state law is doubtful.
 
 
 36
 Pearl Inv. Co. v. City & County of San Francisco, 774 F.2d 1460, 1463 (9th Cir.1985) (quotations omitted), cert. denied, 476 U.S. 1170, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986). This case meets each of these requirements.
 
 
 37
 First, this Court has consistently held that "land use planning is a sensitive area of social policy that meets the first requirement for Pullman abstention." Kollsman v. City of Los Angeles, 737 F.2d 830, 833 (9th Cir.1984), cert. denied, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). Furthermore, the second prerequisite is met because, "Given [an] opportunity, a state court might avoid the federal constitutional issues by deciding that an illegal taking under the California Constitution has occurred." Sederquist, 590 F.2d at 282. Certainly, if the California courts provide Sinclair just compensation for a taking under state law, it might be unnecessary to address the oil company's federal taking claim. Of course, adjudication of the state claims is not absolutely certain to obviate the need for considering the federal constitutional issues.[5] Sinclair might, for example, object to the amount of compensation received. For Pullman purposes, though, it is sufficient if the state law issues might "narrow" the federal constitutional questions. Pearl, 774 F.2d at 1464. Resolution of the California law issues would most certainly narrow a federal court's constitutional inquiry in this case.
 
 
 38
 Finally, we find that the determinative issues of state law are uncertain. To be sure, the conventional inverse condemnation claim advanced by Sinclair does not appear to be particularly extraordinary or unique, and Sinclair does not raise a novel claim of statutory interpretation. Still, the Plan itself has not yet been challenged in the state courts. In a somewhat similar case, this Court observed that a local government's enactment of land use regulations "is by nature a question turning on the peculiar facts of each case in light of the many [applicable] local and state-wide land use laws...." Santa Fe Land Improvement Co. v. City of Chula Vista, 596 F.2d 838, 841 (9th Cir.1979) (quotation omitted). The court continued, "We do not claim the ability to predict whether a state court would decide that the [local government] here abused its discretion." Id. (quotation omitted). But see Pearl, 774 F.2d at 1465 (criticizing this Court's liberal approach toward Pullman's third requirement in land use cases, but nonetheless following that reasoning as controlling precedent).
 
 
 39
 We recognize that we cannot appropriately direct the district court to refrain from exercising its jurisdiction over this litigation solely because the suit involves an inverse condemnation action. See Pearl, 774 F.2d at 1465 n. 3. Nevertheless, it is apparent to us that this case meets the criteria for Pullman abstention. See Kollsman, 737 F.2d at 836 n. 18 ("[A]bstention often will be appropriate when state land use regulations are challenged on state and federal grounds."). We therefore instruct the district court to abstain from considering Sinclair's only cause of action that is currently ripe for adjudication.[6]
 
 III. CONCLUSION
 
 40
 The district court properly dismissed all of Sinclair's causes of action except for the federal taking claim to the extent it asserts the Plan does not substantially advance a legitimate state interest. Though that claim is presently justiciable, we direct the district court to utilize Pullman abstention to defer adjudication of the issue.
 
 
 41
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.
 
 
 
 *
 The Honorable Floyd R. Gibson, Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 Sinclair also filed, in September of 1993, a suit in state court seeking to nullify the Plan as inconsistent with California's Environmental Quality Act and the California Coastal Act. In its state court prayer for relief, Sinclair does not request damages or "just compensation." Instead, the company merely desires a peremptory writ invalidating the Plan. Furthermore, the parties informed this Court by letter that the state litigation has been voluntarily stayed until October 24, 1996
 
 
 [2]
 Sinclair vigorously maintains that its federal claims involve only facial challenges to the Plan, and a fair reading of the complaint supports this assertion. Indeed, due to Sinclair's failure to submit to the County any plan to develop More Mesa, the dictate of Williamson County would render unripe any as applied claims that the company might have raised. See, e.g., Christensen, 995 F.2d at 164 (applying ripeness requirements to as applied taking claim)
 
 
 [3]
 We note that the district court should amend its order to reflect that this count is dismissed with prejudice
 
 
 [4]
 Sinclair's fourth cause of action seeks compensation for a "taking" under the California Constitution. This may correctly be viewed as an action in inverse condemnation. Likewise, Sinclair's first cause of action for a writ of mandate may properly be deemed the declaratory judgment claim. Although the court in Hensler stated that a writ of mandate should normally be used in as applied, rather than facial, challenges, that case involved merely a zoning ordinance. In this suit, Sinclair contests the validity of a portion of the County's general plan. California law requires landowners to use a writ of mandate to challenge any element of a general plan. Cal. Gov't Code § 65751 (West 1996). Thus, by combining a writ of mandate with an inverse condemnation action, Sinclair apparently desires to satisfy the applicable statute as well as the procedures envisioned by relevant caselaw
 
 
 [5]
 Of course, in order to preserve these issues for federal review, Sinclair will be obliged to make an England reservation in state court. See Sederquist, 590 F.2d at 281
 
 
 [6]
 Because this federal taking claim is an action "at law" for just compensation, the district court should retain jurisdiction and enter a stay deferring consideration of this ground for relief until Sinclair's state law claims are definitively resolved in the California courts. See Quackenbush v. Allstate Ins. Co., --- U.S. ----, ----, 116 S.Ct. 1712, 1728, 135 L.Ed.2d 1 (1996) (concluding that federal courts can dismiss based on abstention only where the relief sought is equitable or otherwise discretionary)