**NORTH PACIFICA, LLC, Plaintiff,**

v.

**CITY OF PACIFICA, et al., Defendants.**

**No. C–01–4823–EMC.**

United States District Court, N.D. California.

Nov. 26, 2002.

1054

Jacquelynn C. Pope, Warshaw & Pope, Hermosa Beach, CA, for plaintiff.

Michelle Marchetta Kenyon, McDounough, Holland & Allen, Oakland, CA, for defendant.

**ORDER GRANTING PLAINTIFF'S MOTION TO RECONSIDER ITS PRIOR ORDER (Docket No. 50) AND GRANTING DEFENDANT'S MOTION TO DISMISS (Docket No. 8)**

EDWARD M. CHEN, Magistrate Judge.

## I. FACTUAL SUMMARY AND PROCEDURAL HISTORY [1]

### A. First Amended Complaint

This suit by North Pacifica, LLC (hereinafter referred to as "North Pacifica")

arises out of alleged violations of law by the City of Pacifica [2] in its handling and processing of North Pacifica's Development Permit Application for the construction of twenty-four (24) residential units in an area known as the "Bowl." The Permit Application was filed on July 31, 1999.

After lengthy delays in obtaining an application completion date from the City, North Pacifica filed in the San Mateo Superior Court, a Petition for a Writ of Administrative Mandate and/or Traditional Mandate on November 9, 2001, challenging the June 5, 2001 date of completion of the application deemed by the City, [3] a date which permitted the City to avoid violation of laws governing the completion of an Environmental Impact Report. SAC ¶ 53. On December 10, 2001, North Pacifica also filed in San Mateo County, a complaint against the City claiming: [1] denial of substantive Due Process; [2] denial of Equal Protection; [3] violation of 42 U.S.C. § 1983; and [4] declaratory relief (seeking determination of an earlier completion date and of North Pacifica's right to the City's certification of an EIR within one year of the completion date).

On December 7, 2001, North Pacifica filed an identical complaint against the City in this Court. North Pacifica subsequently filed the First Amended Complaint on January 7, 2002, with the same claims. On February 11, 2002, the City filed a Motion to Dismiss Plaintiff's First Amended Complaint.

On July 30, 2002, this Court dismissed Plaintiff's substantive Due Process claim

---

1. In reviewing the City's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must assume all factual allegations to be true and must construe them in the light most favorable to the nonmoving party. *See North Star Int'l v. Arizona Corp. Comm'n,* 720 F.2d 578, 580 (9th Cir.1983).

2. The City of Pacifica, the Pacifica Planning Commission and the Pacifica City Counsel shall hereinafter collectively be referred to as the "City."

3. The facts are described in greater detail in the Court's July 30, 2002 order dismissing Plaintiff's Due Process Claim.

(the first and a portion of the third causes of action) for failure to establish a protectable property interest: 2) denied Defendant's motion to dismiss Plaintiff's Equal Protection claim (the second cause of action); and 3) dismissed Plaintiff's declaratory relief claim (the fourth cause of action) after declining to exercise supplemental jurisdiction. The City has since approved North Pacifica's application to develop the Bowl, thus leaving as the only relief at issue damages for the City's alleged violation of North Pacifica's rights.

On September 5, 2002, North Pacifica filed a motion for reconsideration under Civil Local Rule 7–9, and/or for relief from inadvertence and/or neglect pursuant to Federal Rules of Civil Procedure, Rule 60(b). North Pacifica requests that this Court reconsider its Order of July 30, 2002 in which it dismissed North Pacifica's substantive due process claim, contending that the Court erred in finding no protectable property interest.

## II. *ANALYSIS*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *North Star Int'l v. Arizona Corp. Comm'n,* 720 F.2d 578, 581 (9th Cir.1983). Dismissal of an action pursuant to Rule 12(b)(6) is appropriate only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Levine v. Diamanthuset, Inc.,* 950 F.2d 1478, 1482 (9th Cir. 1991), *quoting, Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Allwaste, Inc. v. Hecht,* 65 F.3d 1523, 1527 (9th Cir.1995). It is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims. *Gilligan v. Jamco Development Corp.,* 108 F.3d 246, 249 (9th Cir.1997). In reviewing such a motion, the Court must assume all factual allegations to be true and must construe them in the light most favorable to the nonmoving party. *North Star,* 720 F.2d at 580.

## A. *North Pacifica's Motion to Reconsider*

On July 30, 2002, this Court held that North Pacifica could not set forth facts in support of its substantive due process claim because the Court found that neither the Pacifica Municipal Code, the California Environmental Quality Act ("CEQA"), nor the Permit Streamlining Act ("PSA") contained mandatory criteria that substantially constrained the City's discretion to deny the Development Permit. North Pacifica now moves for reconsideration under Civil Local Rule 7–9, and/or for relief from inadvertence and/or neglect pursuant to Federal Rules of Civil Procedure, Rule 60(b). The Local Rules allow for reconsideration when the moving party can show a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Rule 7–9(b)(3). Moreover, a motion for reconsideration may not "repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered." Rule 7–9(c). After a court enters an order, it may set aside or change its order pursuant to either the local rules or Rule 60. *Ground v. Sullivan,* 785 F.Supp. 1407, 1411 n. 3 (S.D.Cal.1992).

### 1. *Property Interest*

██ North Pacifica's motion for reconsideration is limited to this Court's ruling regarding the PSA. In its previous order, this Court assumed that North Pacifica's substantive due process relied upon establishment of a property interest under Cali-

fornia Government Code § 65589.5(d) of the PSA. This Court held that § 65589.5(d) did not apply because it applied only to low-income housing developments. July 30, 2002 Order, at 13–14. North Pacifica concedes that it inadvertently failed to specify that § 65589.5(j) was the particular subsection upon which it relies, and it now wishes to bring to the Court's attention that fact that § 65589.5(j) applies to all development permits, not just low-income and affordable housing. North Pacifica contends § 65589.5(j) limits the City's discretion in denying North Pacifica's development application in the instant case and thus creates a protectable property interest.

As noted above, this Court's prior ruling was based, in part, upon a determination that § 65589.5 applies to only very low, low, or moderate incoming housing projects. The title of § 65589.5 ("Housing development projects affordable to very low, low, or moderate income households; disapproval; conditions") supports this conclusion, as do most of its subsections. This Court acknowledges that it did not consider § 65589.5(j), so reconsideration is therefore warranted.

Section 65589.5(j) states:

When a proposed housing development project complies with applicable, objective general plan and zoning standards and criteria in effect at the time that the housing development project's application is determined to be complete, but the local agency proposes to disapprove the project or to approve it upon the condition that the project be developed at a lower density, the local agency shall base its decision regarding the proposed housing development project upon written findings supported by substantial evidence on the record that both of the following conditions exist:

(1) The housing development project would have a specific, adverse impact upon the public health or safety unless the project is disapproved or approved upon the condition that the project be developed at a lower density. As used in this paragraph, a "specific, adverse impact" means a significant, quantifiable, direct, and unavoidable impact, based on objective, identified written public health or safety standards, policies, or conditions as they existed on the date the application was deemed complete.

(2) There is no feasible method to satisfactorily mitigate or avoid the adverse impact identified pursuant to paragraph (1), other than the disapproval of the housing development project or the approval of the project upon the condition that it be developed· at a lower density.

 The Court finds that both the plain meaning and legislative history of § 65589.5(j) indicate that this subsection is not restricted to low income housing development projects but instead applies to all housing development projects including the one at issue here. Whereas subsection (d) refers to disapproval of a "housing project for very low, low- or moderate-income households," subsection (j) on its face is not so limited. It covers any "proposed housing development project." When the language of a statute is unambiguous, the plain meaning governs. *Lennane v. Franchise Tax Bd.*, 9 Cal.4th 263, 268, 36 Cal.Rptr.2d 563, 885 P.2d 976 (1994). Moreover, when the California Legislature uses a term or phrase in one portion of a statute but excludes it from another, courts are not to imply an intent to include the missing term in the part of that statute were the term or phrase is excluded. *People v. Gardeley*, 14 Cal.4th 605, 621–22, 59 Cal.Rptr.2d 356, 927 P.2d 713 (1996); Cal.Code of Civ. Proc. § 1858.

Moreover, § 65589.5(j) would be largely duplicative of § 65589.5(d) if subsection (j) applied only to low income housing. *Landrum v. Superior Court* 30 Cal.3d 1, 14, 177 Cal.Rptr. 325, 634 P.2d 352 (1981) ("[E]very statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.") (citing *Stafford v. Realty Bond Service Corp.* 39 Cal.2d 797, 805, 249 P.2d 241 (1952)).

This Court takes judicial notice of relevant legislative documents supplied by North Pacifica in order to better understand the California Legislature's intent regarding § 65589.5. *See Post v. Prati,* 90 Cal.App.3d 626, 633–35, 153 Cal.Rptr. 511 (1979) (courts may properly take judicial notice of legislative committee reports in order to determine legislative intent). To the extent the language of subdivision (j) may be deemed ambiguous, the legislative history of § 65589.5(j) confirms it was intended to apply to housing development projects generally, not only to low-income projects. Section 65589.5(j) was originally enacted as the entirety of § 65589.5 in 1982. Chapter 1438, Cal. Statutes of 1982, at 5483, 5484 (contained in Compilation of Cal. Gov't Code § 65589.5(j) prepared by Legislative History Clearinghouse, Aug. 13, 2002, at 101); *Mira Development Corp. of San Diego v. City of San Diego,* 205 Cal.App.3d 1201, 1221, 252 Cal.Rptr. 825 (1988) (quoting prior version of § 65589.5 in its entirety); *Harroman Co. v. Town of Tiburon,* 235 Cal.App.3d 388, 394, 1 Cal. Rptr.2d 72 (1991) (same). The purpose of § 65589.5(j) was to assure that local governments did not ignore their own housing development policies and general plans when reviewing housing development proposals. Floor Statement of Senator Greene, author of S.B.2011 (contained in Compilation of Cal. Gov't Code § 65589.5(j) prepared by Legislative History Clearinghouse, Aug. 13, 2002, at 27). It

was only through a 1990 amendment that this section was changed to address affordable housing. In the 1990 amendment, the statute was expanded, and the prior version was moved in its entirety to subsection (j). Chapter 1439, Cal. Statutes of 1990, at 6555 (contained in Compilation of Cal. Gov't Code § 65589.5(j) prepared by Legislative History Clearinghouse, Aug. 13, 2002, at 300–303). Since then, § 65589.5 has been amended several times, including by A.B. 3735 in 1994, S.B. 948 in 1999 and A.B. 369 in 2001, but the Legislature has not significantly altered § 65589.5(j). Website of the California Legislative Counsel, Official California Legislative Information <http://www.leginfo.ca.gov/bilinfo.html> (last visited October 10, 2002). Thus the original language and purpose still obtains.

The City argues that in *Chandis Securities Co. v. City of Dana Point,* 52 Cal. App.4th 475, 485, 60 Cal.Rptr.2d 481 (1996), the court of appeal "held" that § 65589.5 applies only to affordable housing projects. Defendants' Opposition to Plaintiff's Motion for Reconsideration, at 6. *Chandis* is inapposite. In *Chandis,* the Dana Point electorate, in two referendums, failed to approve the adoption of a specific plan and a general plan amendment relating to plaintiff's property. The property owner sought to invalidate the referendums on several grounds, including failure to satisfy the requirements of Govt.Code § 65589.5(j). 52 Cal.App.4th at 479, 60 Cal.Rptr.2d 481. The court of appeal affirmed the trial court's grant of defendant's motion for summary judgment. The court held that § 65589.5(j) did not apply to the approval or disapproval of specific plans. It only applied to specific housing development projects. *Id.* at 485, 60 Cal.Rptr.2d 481. In dicta, the *Chandis* the court noted, "[S]ection 65589.5 does not apply to this case. It concerns afford-

able housing developments." *Id.* Not only was this dicta not the basis of its holding, *Chandis* went on to analyze the meaning of the phrase "housing development project" and found that this phrase did not apply to the disapproval of a specific plan, and that the burdensome statutory requirements to make findings need not be satisfied when enacted by the electorate via a referendum. *Id.* at 486, 60 Cal. Rptr.2d 481. Such an analysis would have been unnecessary if *Chandis* truly stood for the proposition that § 65589.5 applies exclusively to affordable housing projects since the Dana Point development did not involve a low-income housing development project.

■ Accordingly, § 65589.5(d) applies to North Pacifica's proposed housing development. The issue then is whether § 65589.5(d) imposes a sufficient restriction on the City's discretion to deny the application so as to create a property interest. *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.,* 24 F.3d 56, 62 (9th Cir.1994) ("A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution."); *Nunez v. City of Los Angeles,* 147 F.3d 867, 871 (9th Cir.1998) (requiring a cognizable property or liberty interest as a threshold requirement to a substantive due process claim).

As noted in this Court's prior order, a constitutionally protected property interest will be found where that law imposes "a substantial limitation" on the government's discretion to deny a permit. *Wedges/Ledges,* 24 F.3d at 63–64; *see also Woodwind Estates, Ltd. v. Gretkowski,* 205 F.3d 118, 123 (3d Cir.2000) ("[T]he holder of a land use permit has a property interest if a state law or regulation limits the issuing authority's discretion to restrict or revoke the permit by requiring that the permit

issue as a matter of right upon compliance with terms and conditions prescribed by the statute or ordinance."); *Stivers v. Pierce,* 71 F.3d 732, 740 n. 4 (9th Cir.1995) (protectable property interest in a investigator license existed because state statutes significantly limited the actions of the state's Private Investigator Licensing Board).

Section 65589.5(j) directs that a decision to disapprove a project that complies with general plan and zoning standards must be based on written findings supported by substantial evidence that (1) the project would have an adverse impact on the public health or safety, and (2) that there is no feasible method to satisfactorily mitigate or avoid this adverse impact. Cal. Gov't Code § 65589.5(j). Under § 65589.5(j), the City must determine whether the proposed project complies with the general plan and zoning standards. If it does, it can be disapproved or conditioned on a lower density only if it would have a "specific, adverse impact" upon public health or safety and there is no feasible way to mitigate that impact. If the City's disapproval or conditional approval is challenged in court, the burden is on the City to prove its decision conformed to all the conditions specified in § 65589.5. Cal. Gov't Code § 65589.6.

Section 65589.5(j) thus imposes mandatory conditions limiting the City's discretion to deny the permit. *Wedges/Ledges,* 24 F.3d at 62 (" 'A reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms.' ") (citation omitted); *Foss v. National Marine Fisheries Service,* 161 F.3d 584, 588 (9th Cir.1998) ("The Ninth Circuit has long held that applicants have a property interest protectable under the Due Process Clause where the regulations establishing entitlement to the benefit are,

as here, mandatory in nature."). It does so by setting forth the *only* conditions under which an application may be disapproved. *City of Santa Clara v. Andrus,* 572 F.2d 660, 676 (9th Cir.1978) ("[A] statute creates an entitlement to a government benefit if the statute sets out conditions under which the benefit must be granted or if the statute sets out the *only* conditions under which the benefit must be denied.") (internal citations omitted).

Finally, the determinations that must be made by the permitting agency—whether the proposed project complies with the applicable general plan and zoning standards and whether it would impose a "specific, adverse impact" upon public health or safety, though general, are sufficiently objective under *Parks v. Watson,* 716 F.2d 646 (9th Cir.1983) to constitute an "articulable standard sufficient to impose a 'significant substantive restriction' " on discretion so as to create a property interest. *Id.* at 657 (citation omitted). In *Parks,* the Ninth Circuit addressed an Oregon statute specifying that in ruling on a petition to vacate streets, the agency shall determine whether "the public interest will be prejudiced by the vacation." *Id.* The court held this restraint on discretion created a property interest: "We believe that a determination as to whether the public interest will be prejudiced, while obviously giving a certain amount of play in the decisional process, defines an articulable standard." *Id.* The determinations required here by § 65589.5(d) are no more general than that in *Parks.* They create an "articulable standard" sufficient to create a property interest.

## 2. *Substantive Due Process*

■ Since the Court finds, upon reconsidering that North Pacifica can establish a constitutionally-protected property interest, the Court must decide whether North Pacifica's complaint states a cause of action for a substantive due process violation. Substantive due process prohibits "certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.' " *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (citing *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). Substantive due process protection is usually reserved for the vindication of fundamental rights, such as matters relating to marriage, family, procreation, and bodily integrity. *Albright v. Oliver,* 510 U.S. 266, 271–72, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Halverson v. Skagit County,* 42 F.3d 1257, 1261–62 (9th Cir.1994); *Tyson v. City of Sunnyvale,* 920 F.Supp. 1054, 1062–63 (N.D.Cal.1996).

■ In the case at bar, North Pacifica's application for development permit was never denied. Indeed, it has been granted. The claimed deprivation of property stems from the allegedly illegitimate delay in processing application. Both parties submitted extensive supplemental briefing on whether delay in the processing of North Pacifica's application constitutes a significant enough injury to trigger substantive due process, as well as related issues. In particular, the parties were instructed to brief the significance of *Tahoe–Sierra Preservation Council v. Tahoe Regional Planning Agency,* 535 U.S. 302, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002) and subsequent lower court cases citing *Tahoe–Sierra.* In *Tahoe–Sierra,* a developer brought a facial challenge to a local agency's 32–month moratorium on development. The Court held that the delay in that case did not constitute a takings of property requiring compensation under the Takings Clause. *Id.* at 1478–85.

North Pacifica argues that *Tahoe–Sierra* is irrelevant to the case at bar because the

standards for a takings claim differ from those of a substantive due process claim and that its substantive due process claim is not based upon delay. Plaintiff's Second Supplemental Brief in Opposition to Motion to Dismiss, at 1, 4–6; Plaintiff's Letter Brief of October 23, 2002, at 1–5. The City argues that the delay in this case does not violate due process and that, in any event, North Pacifica's substantive due process claim is preempted by the Takings Clause. Defendant's Letter Brief of October 23, 2002. The City's latter argument raises a fundamental question that must be addressed.[4]

North Pacifica cites *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1407 (9th Cir.1989) in arguing that substantive due process claims are distinguishable from takings claims in that the former do not have ripeness or exhaustion of remedies requirements because the harm is cognizable the instant that it occurs. Plaintiff's Second Supplemental Brief in Opposition to Motion to Dismiss, at 5; Plaintiff's Letter Brief of October 23, 2002, at 3. However, since *Sinaloa* was decided in 1989, the landscape of substantive due process jurisprudence has changed in the Ninth Circuit. While *Sinaloa* permitted plaintiffs to bring both a takings claim and a substantive due process claim, this aspect of *Sinaloa* was expressly overruled by *Armendariz v. Penman*, 75 F.3d 1311 (9th Cir.1996) (en banc).

In *Armendariz*, the City of San Bernardino, allegedly in order to evict tenants and clear an area for a shopping center, forced tenants to move out while minor building code violations were to be fixed but refused to issue permits for repairs, ultimately forcing landlords out of business. *Id.* at 1313–15. The Ninth Circuit, applying *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989),[5] held that plaintiff's substantive due process claims were preempted by the Takings Clause because plaintiff's claim implicated the more explicit provisions of the Fifth Amendment. *Id.* at 1320. The court reasoned that "[b]ecause the Fourth and Fifth Amendments provide explicit limitations on the type of government conduct challenged by the plaintiffs, *Graham* dictates that those Amendments, not the Fourteenth Amendment's guarantee of

**4.** North Pacifica objects to the City's Takings Clause preemption argument on the grounds that this argument was not included in the City's original Motion to Dismiss. Plaintiff's Letter Brief of October 30, 2002. While not raised in the original motion to dismiss, the City cited *Armendariz* and *Macri*, in making substantially the same argument that North Pacifica was bringing an unripe takings claim under the guise of substantive due process in April, 2002 in response to this Court's request for supplemental briefing. Defendant's First Supplemental Brief in Support of Motion to Dismiss, at 12–13 n. 9. Moreover, the issue was squarely raised in the briefing ordered by the Court, and North Pacifica has been given a fair opportunity to argue the issue.

**5.** In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), a § 1983 substantive due process claim against law enforcement officials over the alleged use of excessive force in the course of an investigative stop, the Court held that such a claim is properly analyzed under the Fourth Amendment's "objective reasonableness" standard. *Id.* at 388, 109 S.Ct. 1865. The Court remanded with direction to reconsider plaintiff's claims under the explicit provisions of Fourth Amendment rather than under a substantive due process approach. *Id.* at 394–399, 109 S.Ct. 1865. *See also Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (plurality opinion of Rehnquist, C.J.) (quoting *Graham*, 490 U.S. at 395, 109 S.Ct. 1865).

substantive due process, should guide the analysis of the plaintiff's claim. This conclusion follows straightforwardly from *Graham*, for while this case does not arise in the criminal context, the Supreme Court's admonition in *Graham* is no less applicable here than in that case or in *Albright*." *Id.*

*Armendariz* and its progeny have applied this analysis expansively. In *Armendariz*, the plaintiffs did not claim that a takings had occurred, but asserted that city's pretextual invocation of its emergency powers was arbitrary and capricious and violated substantive due process. 75 F.3d at 1315. Nonetheless, *Armendariz* held that *Graham* "is an insurmountable hurdle for the plaintiff's substantive due process claim." *Id.* at 1324; *see also id.* at 1325–26 ("Since *Sinaloa*, the Supreme Court has made clear what was implicit in *Graham*. Substantive due process analysis has no place in contexts already addressed by explicit textual provisions of constitutional protection, regardless of whether the plaintiff's potential claims under those amendments have merit.").[6]

Likewise, in *Macri v. King County*, 126 F.3d 1125, 1129 (9th Cir.1997), a city council denied a property owner's subdivision application, and the Ninth Circuit affirmed the district court's dismissal of plaintiff's takings and substantive due process claims. *Id.* at 1127–29. Citing *Armendariz*, plaintiff's substantive due process claims were held to be preempted by the Takings Clause. *Id.* at 1129. *Macri* rejected plaintiff's efforts to avoid *Armendariz* by classifying their claim solely as a substantive due process violation: "They argued that when government action fails substantially to advance a legitimate government purpose, the claim should lie under the Due Process Clause regardless of whether the action involved real property rights. Appellants, however, cannot sidestep *Armendariz* by re-characterizing their claim as lying solely in substantive due process." *Id.* at 1129.

In *Esplanade Properties v. City of Seattle*, 307 F.3d 978 (9th Cir.2002), a property owner applied for a permit to construct residential housing in a tideland area. After more than five years of communications about various compliance issues, the city ultimately cancelled the owner's application. The plaintiff alleged both a takings and substantive due process violation. *Id.* at 980–81.. The Ninth Circuit affirmed the district court's dismissal of plaintiff's federal substantive due process claim under *Armendariz*. *Id.* at 982–83. Other Ninth Circuit panels have consistently followed *Armendariz*. *See e.g. Weinberg v. Whatcom County* 241 F.3d 746, 749 n. 1 (9th Cir.2001) (in suit brought by developer challenging an agency's stop work order, the Ninth Circuit would not consider the plaintiff's substantive due process claims in light of an existing takings claim); *Buckles v. King County*, 191 F.3d 1127, 1138 (9th Cir.1999) (in action by property owner alleging a substantive due process violation when his land was redesignated for residential use, the Ninth Circuit affirmed "dismissal of the Buckles' substantive due process claim under *Armendariz* and *Macri* because we 'must' analyze the Buckles' land use claim under the 'explicit textual source of constitutional protection,' the Takings Clause, not the more generalized notion of 'substantive due process.' ") (citing *Armendariz*, 75 F.3d at 1324); *Garneau v. City of Seattle*, 147 F.3d 802 (9th Cir.1998) (in challenge to rent ordinance required landlords to pay

---

**6.** It appears the Ninth Circuit's decision may also have been informed by its view that "the use of substantive due process to extend constitutional protection to economic and property rights has been largely discredited." *Id.* at 1318–19.

part of relocation expenses incurred by low-income tenants, Ninth Circuit held that "because the Takings Clause 'provides an explicit source of constitutional protection against the challenged governmental conduct,' plaintiffs may maintain only a takings challenge and not a substantive due process challenge."); *Patel v. Penman,* 103 F.3d 868, 874–75 (9th Cir.1996) (Ninth Circuit held that the substantive due process claim brought by motel owner in circumstances similar to *Armendariz* was preempted by the Takings Clause under *Graham* and *Armendariz* ); *Sinclair Oil Corp. v. County of Santa Barbara,* 96 F.3d 401, 407 (9th Cir.1996) (Ninth Circuit affirmed the district court's dismissal of plaintiff's substantive due process claims challenging development plan reducing the number of homes potentially allowable on plaintiff's property, as preempted by the Takings Clause under *Armendariz* ). *See also Gould v. County of Mendocino,* 2000 WL 1346787 at *4 n. 4 (N.D.Cal.2000) (in suit in which county determined that landowner's parrot breeding business violated local zoning ordinance, court held that plaintiff's substantive due process claim was preempted by the Takings Clause in accordance with *Macri* and *Armendariz* ); *Hilton v. SF City & County* 2001 WL 1180704, at *3–*4 (N.D.Cal.2001) (in landlords' challenge to San Francisco rent ordinance, the court ruled that plaintiff's substantive due process claim must be dismissed without leave to amend because this claim may only be brought under the Takings Clause).

The question in this case is whether North Pacifica's due process claim entails conduct addressable under a takings analysis and thus must be brought under the more explicit Takings Clause of the Fifth Amendment. The Court concludes that it is. North Pacifica's claim of a loss of property during the period of the City's illegitimate delay in processing its applica-

tion is in essence a claim for a temporary taking in the course of the City's land use regulation. Such a temporary regulatory taking may be actionable. *First English Evangelical Lutheran Church v. Los Angeles County,* 482 U.S. 304, 321, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987) ("[W]here the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective."); *see also Landgate, Inc. v. California Coastal Comm'n,* 17 Cal.4th 1006, 1024, 73 Cal.Rptr.2d 841, 953 P.2d 1188 (1998); *California Coastal Comm'n v. Superior Court,* 210 Cal.App.3d 1488, 1495–98, 258 Cal.Rptr. 567 (1989); *City of Needles v. Griswold,* 6 Cal.App.4th 1881, 1888, 8 Cal.Rptr.2d 753 (1992). Indeed, *Tahoe–Sierra Preservation Council* makes clear that depending on the circumstances, a temporary deprivation affected by land use regulation may constitute a takings under the Fifth Amendment.

Moreover, North Pacifica argues that the City's action did not have a rational relationship to a legitimate state purpose. Plaintiff's First Supplemental Brief in Opposition to Motion to Dismiss, at 9–10. *See* Plaintiff's Second Amended Complaint at ¶ 60. While this allegation is asserted as a basis for North Pacifica's substantive due process claim, it may also be the basis of a takings claim. *See Macri* 126 F.3d at 1129 ("The Supreme Court has repeatedly recognized that a land use restriction that does not 'substantially advance legitimate state interests' or 'denies an owner economically viable use of his land' effects a taking.") (citing *Agins v. City of Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980); *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 834, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987); *Dolan*

v. *City of Tigard,* 512 U.S. 374, 383–85, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994)).

■ Thus, despite North Pacifica's attempt to cast its claim solely as a substantive due process claim, the claim must be treated as a takings claim under *Armendariz* and its progeny. Assuming arguendo that the City's delay constituted a takings,[7] North Pacifica's claim must be dismissed on grounds of ripeness.

■ The Supreme Court has imposed a two-prong ripeness requirement to takings claims brought in federal court against a state or local government agency. *Williamson County Regional Planning Comm'n v. Hamilton Bank* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). First, before a plaintiff can bring an "as applied" takings suit in federal court it must first obtain from the governmental agency a sufficiently "final decision regarding how it will be allowed to develop its property." *Id.* at 190, 105 S.Ct. 3108; *see also Sinclair Oil Corp.,* 96 F.3d at 405. Generally, to satisfy the *Williamson* finality prong "a California landowner must submit to local decision-makers at least one meaningful application for a development project and a variance." *Sinclair Oil Corp.,* 96 F.3d at 405; *see also Southern Pac. Transp. Co. v. City of Los Angeles,* 922 F.2d 498, 503 (9th Cir.1990) ("In applying the 'final determination' requirement, courts have emphasized that local decision-makers must be given an opportunity to review at least one reasonable development proposal before an as-applied challenge to a land use regulation will be considered ripe.") (citations omitted).

■ Second, takings claims must also satisfy a compensation exhaustion prong: "[I]f a State provides an adequate procedure for seeking just compensation,

the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson,* 473 U.S. at 195, 105 S.Ct. 3108; *see also Macri,* 126 F.3d at 1129 ("If a state has an adequate procedure for compensation, until this procedure has been exhausted and the plaintiff denied compensation, no taking has occurred.") (citation omitted); *First English Evangelical Lutheran Church,* 482 U.S. at 312 n. 6, 107 S.Ct. 2378 (in temporary regulatory takings case, the Court noted the ripeness requirement under *Williamson* was satisfied because the California Court of Appeal dismissed the action, rendering California's inverse condemnation procedure unavailable). As the Court explained in *Williamson,* "[B]ecause the Constitution does not require pretaking compensation, and is instead satisfied by a reasonable and adequate provision for obtaining compensation after the taking, the State's action here is not 'complete' until the State fails to provide adequate compensation for the taking." 473 U.S. at 195, 105 S.Ct. 3108.

Assuming arguendo that North Pacifica meets the final determination prong of *Williamson,* the key issue here is whether California law provides an adequate procedure for compensation, such as an inverse condemnation claim, which must be exhausted. *Macri,* 126 F.3d at 1129 ("Washington has an adequate procedure for reimbursement for the taking of property.... Therefore, dismissal of Appellant's claim on ripeness grounds was proper.") (citations omitted). The Ninth Circuit has repeatedly recognized the sufficiency of California's inverse condemnation procedures to remedy regulatory takings. *Jones Intercable of San Diego, Inc.*

---

7. *Cf. Landgate, Inc. v. California Coastal Comm'n, supra,* 17 Cal.4th at 1024, 73 Cal.

Rptr.2d 841, 953 P.2d 1188 (unreasonable delay may constitute takings).

*v. City of Chula Vista,* 80 F.3d 320, 324 (9th Cir.1996) ("In order for Jones' claim that the City took its property without just compensation to be ripe for federal judicial review, Jones was required first to seek compensation through California's inverse condemnation proceedings."); *see also Carson Harbor Village Ltd. v. City of Carson,* 37 F.3d 468, 475 (9th Cir.1994); *Levald, Inc. v. City of Palm Desert,* 998 F.2d 680, 686 (9th Cir.1993). Importantly, the California courts have recognized that an inverse condemnation remedy for even a temporary taking is actionable under certain circumstances. In *Landgate Inc. v. California Coastal Comm'n, supra,* 17 Cal.4th 1006, 73 Cal.Rptr.2d 841, 953 P.2d 1188, the California Supreme Court held that a two year delay in granting a development permit did not constitute a temporary taking, but recognized that such a taking could be proven where the delay failed to advance a legitimate governmental objective: "It would be, of course, a different question if, even though the Commission's position on the lot line adjustment substantially advanced a legitimate state interest, that position was so unreasonable from a legal standpoint as to lead to the conclusion that it was taken for no purpose other than to delay the development project before it. Such a delaying tactic would not advance any valid government objective." *Id.* at 1024, 73 Cal.Rptr.2d 841, 953 P.2d 1188; *Cf. Loewenstein v. City of Lafayette,* Daily Appellate Report Nov. 15, 2002 at 12897, 12900–03 (Cal. First App.Dist. Nov. 13, 2002 No. 1093590) (two year delay in obtaining a lot line adjustment was not an unlawful temporary taking because there was no substantial evidence that the city was not motivated by a substantial government interest, and because the *Landgate* exception did not apply since the de-

lay was not so unreasonable that it could be inferred that a valid government purpose was lacking).

The availability of state remedies is evident here. In November 2001, one month before North Pacifica brought this action in federal court, it petitioned for writ of mandamus in San Mateo Superior Court in order to challenge the City's determination that the completion date of North Pacifica's development permit for the Bowl was June 5, 2001. North Pacifica amended this petition in February, 2002. Defendant's Request for Judicial Notice, at Exhibit A–B (Case No. C–419014). More importantly, North Pacifica's separate complaint in Superior Court, which mirrors the one filed in this Court, seeks, *inter alia,* damages for the alleged violation of substantive due process. *Id.* at Exhibit C. In order to satisfy the *Williamson* ripeness requirement in this case, North Pacifica would have had to exhaust its remedies in seeking compensation in state court *before* filing this action in federal court. *Jones Intercable,* 80 F.3d at 324 ("More important, Jones' state court action contesting the validity of Chula Vista's regulatory requirement was still pending when it brought this action, and apparently remains pending to this day. A regulatory taking claim is not ripe until the decision of the regulating authority has become final.... We conclude that Jones' taking claim is premature, and we cannot entertain it.") (citing *Williamson,* 473 U.S. at 186, 105 S.Ct. 3108); *Macri,* 126 F.3d at 1129 (affirming the district court's dismissal of property owner's Fifth Amendment takings claim on ripeness grounds, and declaring, "It is axiomatic that a takings violation is not complete until the plaintiff has sought compensation through state remedies and been denied ...").[8]

---

**8.** In *Macri,* defendants removed the case to federal court, and the parties reached a settle-

As North Pacifica acknowledges when it relies upon *Sinaloa*, the requirement of ripeness is a key distinction between a takings claim and a substantive due process claim. *Williamson*, 473 U.S. at 195 n. 14, 105 S.Ct. 3108 ("Unlike the Due Process Clause, however, the Just Compensation Clause has never been held to require pretaking process or compensation.") (citations omitted). In overruling *Sinaloa*, the Ninth Circuit, sitting en banc in *Armendariz*, not only recognized this distinction but sought to close a loophole by which plaintiffs could avoid satisfying a Takings Clause ripeness requirement by characterizing the claim as a violation of substantive due process. *Armendariz*, 75 F.3d at 1325. The court noted that in *Sinaloa*, "plaintiffs were able to present what was essentially a takings claim without exhausting their state remedies, thereby escaping a critical prerequisite to ordinary Fifth Amendment takings claims.... Permitting a plaintiff to bring a substantive due process claim whenever his claims under other constitutional provisions are unsuccessful, as we did in *Sinaloa*, gives the plaintiff, under substantive due ·process analysis, protection which the constitution does not afford, gutting the *Graham* rule of all meaning." *Id.* (citing *Williamson*, 473 U.S. 172, 105 S.Ct. 3108). *See also Macri*, 126 F.3d at 1128–29 ("A second concern we addressed in *Armendariz*, which was also a concern for Appellants in this case, was a loophole in takings law regarding the ripeness doctrine."). North Pacifica cannot be permitted to pass through a ripeness loophole the Ninth Circuit sought to close in *Armendariz* and *Macri*. Accordingly, since North Pacifica has not exhausted its state remedies for seeking compensation for the City's acts alleged herein, its substantive due process

claims, properly treated as a takings claim, must be dismissed.

## III. *CONCLUSION*

For the reasons stated above, the Court **GRANTS** North Pacifica's Motion to Reconsider (Docket No. 50), but upon reconsideration it **GRANTS** the City's Motion to Dismiss (Docket No. 8) because North Pacifica's substantive due process claim covering the Bowl must be treated as a taking claim. That claim is not ripe. The Court **DISMISSES** North Pacifica's substantive due process claims without prejudice to refiling when and if North Pacifica exhausts its California state proceedings for damages. *See Macri*, 126 F.3d at 1130 ("However, we have expressly held that the failure of a plaintiff to raise a federal takings claim in state court does not preclude that plaintiff from bringing a subsequent federal takings claim in federal court.") (citing *Dodd v. Hood River County*, 59 F.3d 852, 859–60 (9th Cir.1995)); *Gould*, 2000 WL 1346787 at *4 (holding that plaintiffs' substantive due process claim is an unripe takings claim and therefore dismissing without prejudice to refiling should plaintiffs exhaust their local/state proceedings). The Court does not address the question whether the City's delay in processing the application constitutes a takings.

IT IS SO ORDERED.

ment on plaintiff's state law inverse condemnation claim after the district court remanded

that claim to state court. 126 F.3d at 1127 n. 4.