**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NORTH PACIFICA LLC,
    *Plaintiff-Appellee,*

  v.

CITY OF PACIFICA; PACIFICA
PLANNING COMMISSION; PACIFICA
CITY COUNCIL,
    *Defendants-Appellants.*

No. 05-16069

D.C. No.
CV-01-04823-EMC

---

NORTH PACIFICA LLC,
    *Plaintiff-Appellant,*

  v.

CITY OF PACIFICA; PACIFICA
PLANNING COMMISSION; PACIFICA
CITY COUNCIL,
    *Defendants-Appellees.*

No. 05-16146

D.C. No.
CV-01-04823-EMC

---

NORTH PACIFICA LLC,
    *Plaintiff-Appellee,*

  v.

CITY OF PACIFICA; PACIFICA
PLANNING COMMISSION; PACIFICA
CITY COUNCIL,
    *Defendants-Appellants.*

No. 06-15102

D.C. No.
CV-01-04823-EMC

NORTH PACIFICA LLC,
     *Plaintiff-Appellant,*

v.

CITY OF PACIFICA; PACIFICA
PLANNING COMMISSION; PACIFICA
CITY COUNCIL,
     *Defendants-Appellees.*

No. 06-15131
D.C. No.
CV-01-04823-EMC

NORTH PACIFICA LLC,
     *Plaintiff-Appellee,*

v.

CITY OF PACIFICA; PACIFICA
PLANNING COMMISSION; PACIFICA
CITY COUNCIL,
     *Defendants-Appellants.*

No. 06-15631
D.C. No.
CV-01-04823-EMC

NORTH PACIFICA LLC,
     *Plaintiff-Appellant,*

v.

CITY OF PACIFICA; PACIFICA
PLANNING COMMISSION; PACIFICA
CITY COUNCIL,
     *Defendants-Appellees.*

No. 06-15772
D.C. No.
CV-01-04823-EMC
OPINION

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, Magistrate Judge, Presiding

Argued and Submitted
January 14, 2008—San Francisco, California

Filed May 13, 2008

Before: J. Clifford Wallace, Procter Hug, Jr., and
Mary M. Schroeder, Circuit Judges.

Opinion by Judge Schroeder

## COUNSEL

Jacquelynn Pope, Hermosa Beach, California, for plaintiff-appellee-appellant North Pacifica, LLC.

Lee Rosenthal, Oakland, California for defendants-appellants-appellees City of Pacifica, et al.

**OPINION**

SCHROEDER, Circuit Judge:

These appeals arise out of a convoluted series of events illustrating the friction that can grow between a developer trying to secure approval of a condominium project as quickly as possible, and a city trying to use development permit procedures to avoid all foreseeable future problems. The plaintiff-developer is North Pacifica LLC and the defendant is the City of Pacifica. The conduct on the part of both sides has led to moving targets for litigation activity, and the entire project is still tied up in proceedings before the California Coastal Commission.

The case presents a remarkable series of ironic twists. The developer originally sued the City for delays in approving its application for development permits, but because of a citizen's appeal to the Coastal Commission, the development is still on hold, long after City approval. The district court awarded damages to the developer, not on the basis of any harm alleged in its original complaint, but because of a condition in the permit to which the developer never voiced any objection in the hearing before the City Council. The condition in question was inserted by outside counsel the City hired in order to avoid litigation, and the condition has, of course, had the opposite result. Finally, the district court correctly dismissed the substantive due process claim in the original complaint, but for the wrong reason, incorrectly treating it as a takings claim that required exhaustion of state court remedies, rather than as a substantive due process claim for delays that, contrary to the complaint's allegations, were not unreasonable. *See N. Pacifica, LLC v. City of Pacifica*, 234 F. Supp. 2d 1053, 1064-66 (N.D. Cal. 2002).

The disputes before us boil down to first, the developer's contentions that we should resurrect its substantive due process claim and that we should remand for the award of addi-

tional damages on the equal protection claim, and second, to the City's arguments that the developer was not entitled to judgment, damages, or attorneys' fees in the first place. The City is correct.

We agree with the City that the developer was not entitled to judgment on the equal protection claim that is before us, because the City did not intentionally treat this developer differently from any other developer. Outside counsel inserted the now-controversial provision in the recommended permit and the developer raised no opposition at the hearing during which the City Council considered the permit application. There can be no compensatory damages attributable to the provision in any event, because the developer still has not obtained the requisite approval from the Coastal Commission. We also agree with the City that the due process claim should not be resurrected because the developer has not alleged any irrational delay in the City's approval of its permits. Accordingly, we vacate the district court's award of attorneys' fees and costs to North Pacifica and remand for entry of judgment in favor of the City.

## I.  Background

This litigation concerns the efforts of plaintiff North Pacifica ("NP"), a limited liability company, to develop a 4.3-acre parcel of real estate, known as the "Bowl" property, located in the City of Pacifica, California. NP submitted its application to the City for permits to develop its proposed condominium project on August 1, 1999. During the course of the next two years, the City made a number of requests to NP for additional information that the City determined was necessary to assess and evaluate the application. The City deemed the application complete on June 5, 2001. NP filed this action approximately six months later, in December 2001, claiming that the City unreasonably imposed the processing delays in violation of substantive due process and equal protection.

NP also filed one other suit that is relevant to the claims in these appeals. That was a suit in state court against the City to require it to maintain Edgemar Road, an abandoned road abutting the Bowl property. NP eventually lost that suit on the City's appeal to the California Court of Appeal in March 2005, but the action was pending throughout most of this litigation. The suit is one reason the City was anxious to avoid further litigation with NP.

The district court initially dismissed NP's substantive due process claim in this case, but did not dismiss the claim that the delays violated equal protection. On the developer's motion for reconsideration, the district court, in a published decision, ruled that the due process claim was not ripe because the plaintiff had not yet finished seeking compensation in state court. *N. Pacifica, LLC*, 234 F. Supp. 2d at 1064-66.

That left the delay-based equal protection claim for the parties to argue about. This they did in the form of cross-motions for summary judgment. In its motion, the developer for the first time argued that the City inserted a particular provision, known as condition 13(b), as a condition of the City's approval of NP's development permit. Condition 13(b) required NP to make condominium purchasers "jointly and severally" liable for the maintenance of common areas.

The district court granted summary judgment to the City on NP's delay-based equal protection claim but granted NP leave to file a supplemental complaint alleging that condition 13(b) was imposed in violation of equal protection. It is on that supplemental complaint that the district court eventually entered judgment in favor of the developer in the amount of $156,741.19, plus a hefty award of attorney's fees of $453,810.75, and costs of $55,322.40.

In these appeals, the developer challenges the denial of the substantive due process claim. It does not pursue its original

delay-based equal protection claim, but does defend the district court's award of damages on its condition 13(b) equal protection claim, the award that the City, of course, challenges in its appeal.

It is therefore important to understand the factual background of condition 13(b). The condition was inspired by the City's experience litigating against the developer in the Edgemar Road action in state court. The City retained outside counsel to handle all of the City's litigation with NP, and to advise the City on the processing of NP's application for development of the Bowl. An attorney in the retained firm inserted the joint and several liability language of 13(b) into the proposed permit. It was apparently an attempt to ensure that the City never again had to litigate about the road either with the developer or a homeowners' association influenced by the developer. Condition 13(b) requires the development's Conditions, Covenants, and Restrictions ("CC&Rs") to

> specify that the owners of each of the residential units shall be responsible *jointly and severally*, for the repair, maintenance and replacement of the building exteriors, common areas, parking, landscaping, building signage and improvement and maintenance of Edgemar Road to the satisfaction of the City.

*N. Pacifica, LLC v. City of Pacifica*, No. 01-4823, slip op. at 14 (N.D. Cal. Oct. 23, 2003) (emphasis added).

NP received a copy of the proposed permit containing condition 13(b) the day preceding the hearing before the City Planning Commission to consider NP's permit application. On the day of the hearing, NP sent a letter to the City Attorney and to outside counsel objecting to nine of the thirty-nine conditions of approval in the proposed permit, including condition 13(b). Because there was no evidence that any city official provided the letter to the Planning Commission, however,

the district court, after a bench trial, expressly declined to find that the Commission ever received the letter. The Planning Commission approved NP's application for development permits, subject to the thirty-nine conditions of approval, including condition 13(b).

The Commission's approval of the permits was appealed to the City Council by a local citizen who opposed the development. Five days before the Council hearing, NP received notice that a member of the Planning Commission recommended that the City approve the permits subject to all thirty-nine conditions. NP promptly sent a letter to the City Attorney and outside counsel again objecting to the nine conditions, including condition 13(b), and asking that the letter be circulated to the City Council. The letter was not circulated to the City Council until just before the commencement of the hearing on August 12, 2002. This was eight months after this action was filed in district court alleging discriminatory delays in processing the permit application.

During the hearing itself, NP did not specifically object to condition 13(b). It did object to condition 38, which required NP to replace and upgrade a sewer. The City Council amended the sewer condition, but did not modify condition 13(b). One of the City Council members later testified that he was unaware of condition 13(b) at the time of the hearing. No member of the City Council had discussed condition 13(b) with any other member, staff, NP, or any citizen prior to the hearing. The district court eventually found that the City Council was not aware of the objections to condition 13(b) at the time of the hearing.

After the hearing, the City Council approved the development permits subject to all the conditions. NP received notice of the approval by a letter dated September 11, 2002.

On November 6, 2002, NP sent an eighteen-page letter of objections to the City Attorney, outside counsel, a member of

the Planning Department, and the City Clerk for distribution to the City Council. The letter objected to twelve of the thirty-nine conditions of approval, including condition 13(b). The letter protested that condition 13(b) "would render the project unsaleable" because it would prevent NP from obtaining a public report from the California Department of Real Estate, a prerequisite to sales of condominiums. The letter also argued that by imposing condition 13(b), the City was "treat[-ing] NP differently from all other condominium developers in the State of California."

Although two City Council members testified that they had no recollection of the November 6 letter, the district court found that each City Council member received and read the letter. On November 18, Lee Diaz, a member of the City's Planning Department, responded to NP by letter, but did not refer to condition 13(b).

On November 20, 2002, three months after approval of the permits, and almost a year after this litigation was filed, NP sent a letter to the City's outside counsel threatening more litigation if the City did not resolve NP's objections to the various conditions of approval. Copies of this letter were sent to the City Clerk. The district court entered its decision the following week dismissing the delay-based due process claim for failure to pursue state remedies. *N. Pacifica, LLC*, 234 F. Supp. 2d at 1064-66. A delay-based equal protection claim remained. *Id.* at 1056. A challenge to 13(b) had not yet been filed.

The district court litigation proceeded to motions for summary judgment. NP raised condition 13(b) for the first time in its cross-motion for summary judgment, filed on May 7, 2003. On June 11, the district court held a hearing on the motions, where the condition was discussed. Six days after the hearing, the City Planner sent a letter to NP stating that the City would not require NP to include 13(b)'s joint and several liability requirement in its CC&Rs.

The district court viewed the City Planner's letter as insufficient to bind the City, absent City Council action. On July 15, 2003, the district court, over the City's objections, gave NP leave to file the supplemental complaint raising the claim that the City's imposition of condition 13(b) on NP violated equal protection. The court also later denied the City's motion for summary judgment on that claim. After a bench trial, the court in October 2003 concluded that the City violated NP's equal protection rights. The court reserved the issue of damages for a later proceeding.

The City Council then went into action. On November 10, 2003, the City Council held a hearing during which it directed its staff to interpret condition 13(b) so as to impose no joint and several liability. On January 20, 2004, the Planning Commission passed Resolution No. 799, which provided that condition 13(b) "never required and does not now require that each individual homeowner be jointly and severally liable." On January 26, 2004, the City Council adopted Resolution No. 08-04, which endorsed Planning Commission Resolution No. 799.

The district court held a bench trial on damages and in May 2005 awarded NP compensatory damages of $156,741.19 on the 13(b) claim of equal protection violation. The damages represented interest on the reduction in value of the project during the period the condition was in effect. The district court later awarded attorney fees and costs. The City's appeals and NP's cross-appeals followed.

Meanwhile, NP's application for development permits had moved on to another forum. On September 5, 2002, a local citizen appealed to the Coastal Commission the City's approval of a Coastal Development Permit. One week later, the Coastal Commission informed the City by letter that until the appeal was resolved, the Commission considered the permits to be ineffective and that any development would violate the Coastal Act and subject NP to enforcement.

On May 11, 2006, after protracted proceedings, the Coastal Commission denied the Coastal Development Permit because the development plan failed to protect wetlands located on the Bowl property. NP has filed two petitions for writs in the Superior Court seeking to overturn the Coastal Commission's order, and they remain pending.

As things stand now, condition 13(b) is long gone, and the project is still on hold for reasons unrelated to any action by the City. Nevertheless the City remains subject to a substantial judgment making it responsible for damages for delays. The City wants the award of damages overturned and the developer wants more damages and more fees.

## II.   Discussion

### A.   Substantive Due Process

The Plaintiffs allege that the delays in the City's processing of their application resulted in a denial of substantive due process. In recent years, substantive due process law in the context of land-use regulation has taken a winding path. *See, e.g.*, *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 542 (2005); *Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996). In *Armendariz*, we said "[w]e are all painfully aware that the area of substantive due process 'has at times been a treacherous field' for the courts." 75 F.3d at 1318 (quoting *Moore v. East Cleveland*, 431 U.S. 494, 502 (1977) (Powell, J., for plurality)). *Armendariz* considered a claim that city officials' vigorous enforcement of housing code violations in order to shut down places of drug activity violated substantive due process. *Id.* at 1313. We held that any challenge to land use regulation on substantive due process grounds was precluded by the Takings Clause. *Id.* at 1324.

[1] In *Lingle*, however, the Supreme Court concluded that a challenge to land use regulation may state a substantive due process claim, so long as the regulation serves no legitimate

governmental purpose. *See Lingle*, 544 U.S. at 542 ("[A] regulation that fails to serve any legitimate governmental objective may be so arbitrary or irrational that it runs afoul of the Due Process Clause."). In a recent decision we said that "*Lingle* pull[ed] the rug out from under" *Armendariz* and we recognized possible bases for a substantive due process claim. *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 855-56 (9th Cir. 2007). The irreducible minimum of a substantive due process claim challenging land use regulation is failure to advance any governmental purpose. *Id.* at 856. We said there is a due process claim where a "land use action lacks any substantial relation to the public health, safety, or general welfare." *Id.* Such a claim cannot be remedied under the Takings Clause. *Id.*

In a takings claim, the plaintiff must affirmatively establish that it has been denied just compensation. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 (1985). This is essentially because the Takings Clause itself prohibits only takings without just compensation. *See id.* at 194. Nevertheless, the government may not harm others without any legitimate purpose. *See Crown Point Dev., Inc.*, 506 F.3d at 856. Takings that involve violations of due process may therefore be unconstitutional, "notwithstanding any available compensation." *S. Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 507 n.11 (9th Cir. 1990).

The district court in this case dismissed the due process claim on the ground that NP had not shown that it had sought and had been denied just compensation through state remedies. *N. Pacifica, LLC*, 234 F. Supp. 2d at 1066. The district court erred, because NP did not attempt to plead a takings claim, but instead attempted to plead a substantive due process claim.

**[2]** The district court's conclusion, that the claim should be dismissed, may nevertheless be upheld if the complaint failed adequately to allege a denial of substantive due process. To

maintain a substantive due process claim, NP must show that the City's delays in processing its application lacked a rational relationship to a government interest. *See Crown Point Dev., Inc.*, 506 F.3d at 856; *Christensen v. Yolo County Bd. of Supervisors*, 995 F.2d 161, 165 (9th Cir. 1993) ("The rational relationship test . . . applies to substantive due process challenges to property zoning ordinances.").

[3] NP alleges that the City violated its substantive due process rights by repeatedly sending requests for more information that delayed the processing of NP's application. Yet the complaint demonstrates that, each time the City sent a request for more information, it explained that it was requesting relevant information it did not have or information that would allow it to conduct a thorough review. For example, the complaint alleges that on May 23, 2000, ten months after NP filed an application for a development permit, the City sent NP a letter requesting eight items the City had not previously requested. The complaint itself states, however, that these items were needed because, on May 2, NP had revised its development plan to comply with the City's density guidelines. The complaint also alleges that in August the City sent NP another request for information, explaining that NP had failed fully to comply with the May 2000 request. There is a reasonable explanation on the face of the complaint for every delay in the City's eventual approval of the application. The City's repeated information requests thus did not violate NP's substantive due process rights by making unreasonable requests that delayed the project.

In addition to the information requests, NP's complaint also alleges that the City violated its substantive due process rights by terminating its original application and requiring a new one. Yet the complaint alleges that the new application was required after NP's agent, Trumark, wrote to the City and stated that Trumark had "ended its interest in the project." The complaint alleges no facts that suggest the termination

was an arbitrary or capricious act, or unreasonable, in light of the absence of an agent who could pursue the development.

**[4]** NP also alleges that the City required "two environmental impact reports for the same project." The City terminated the first environmental impact report on the basis of NP's argument that NP was exempt from the requirement to prepare a report. Later, when the City deemed NP's application complete and concluded that NP was not exempt from the report requirement, it commissioned a new report. On the basis of the facts alleged, there was no arbitrary or irrational conduct by the City.

## B.  Equal Protection

**[5]** The district court awarded damages on condition 13(b), a condition which applied only to NP's permit. When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a "class of one" claim. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). In order to claim a violation of equal protection in a class of one case, the plaintiff must establish that the City intentionally, and without rational basis, treated the plaintiff differently from others similarly situated. *See id.*; *accord Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004), *overruled on other grounds*, *Action Apt. Ass'n v. Santa Monica Rent Control Opinion Bd.*, 509 F.3d 1020, 1025 (9th Cir. 2007). A class of one plaintiff must show that the discriminatory treatment "was intentionally directed just at him, as opposed . . . to being an accident or a random act." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001).

**[6]** On the basis of the facts developed at trial, the City in this case did not intentionally single out NP for discriminatory treatment. When the City Council approved NP's development permit, the Council did not know condition 13(b) had never been imposed on another development project.

Although NP sent two letters complaining of condition 13(b) before it was approved, the district court found that one letter was not delivered to the City Council, and the other was not delivered in time for the Council to review it before the hearing on the permits. Furthermore, NP did not orally complain about the condition at the hearing. Because NP did not bring its objection to the Council's attention before the Council approved the condition, the Council did not know it was imposing a condition to which NP objected and which the City had not imposed on other developers. That the City, after approving the condition, eventually learned of NP's objection does not make its actions in imposing condition 13(b) intentionally discriminatory. Furthermore, the City ultimately removed the objectionable condition, though, embroiled already in litigation over the development, this took some time. The district court thus erred when it granted judgment to NP on the equal protection claim and awarded it damages and attorneys' fees.

**[7]** There is an additional flaw in the district court's award of substantial compensatory damages. The Supreme Court has held that "no compensatory damages may be awarded in a § 1983 suit absent proof of actual injury." *Farrar v. Hobby*, 506 U.S. 103, 112 (1992). The measure of damages for an equal protection claim alleging that a discriminatory zoning decision temporarily deprived the plaintiff's land of its development potential is reasonable interest on the reduction in value to the project created by the zoning decision, but only for the period of time the condition actually delayed the development of the project. *See Herrington v. County of Sonoma*, 12 F.3d 901, 905 (9th Cir. 1993).

**[8]** The district court awarded NP compensatory damages on its theory that when condition 13(b) was in effect, i.e., from August 2002 to November 2003, the development was worth less than it would have otherwise been, and that NP was entitled to interest on the reduction in value for that limited period. The problem with this theory is that there was no

reduction in value attributable to condition 13(b) because development could not go forward until NP obtained a development permit from the Coastal Commission. The condition did not cause any actual delay. Even if we were to agree that NP should have prevailed on its equal protection claim, it would have been entitled only to nominal damages. *See Farrar*, 506 U.S. at 112.

## III.   Conclusion

The district court's dismissal of NP's substantive due process claim is **AFFIRMED**. The order holding the City liable for an equal protection violation is **REVERSED**. The awards of damages, attorneys' fees, and costs are **VACATED**. We **REMAND** for entry of judgment in favor of the City.